UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NAGLREITER CONSULTING, LLC,
 d/b/a NAGLREITER MDDO,

        Plaintiff,                              Case no. 0:19-cv-62574

vs.

TITAN MEDICAL INC.,

        Defendant.
_____/

## AMENDED COMPLAINT

Plaintiff, NAGLREITER CONSULTING, LLC, d/b/a Naglreiter MDDO ("Naglreiter MDDO"), sues Defendant, TITAN MEDICAL INC. ("Titan"), and alleges as follows:

### COUNT I – BREACH OF CONTRACT

1. This is an action between a citizen of the State of Florida and a foreign corporation with substantial contacts in the State of Florida, for damages exceeding $75,000.00, exclusive of interest, costs and attorneys' fees.

2. The Court's subject matter jurisdiction over this matter is premised upon 28 U.S.C. §1332(a)(2), because:

    a. Plaintiff, Naglreiter MDDO, is a Florida limited liability company with its principal place of business located in Miramar, Florida. Naglreiter MDDO provides third parties with professional services regarding the design, development and commercialization of medical devices out of its Miramar facility;

    b. Defendant, Titan, is a publicly-traded Ontario, Canada corporation with its principal place of business located in Toronto, Ontario, Canada. Titan maintains it

is in the business of designing, developing and commercializing new robotic surgical devices, and that it presently is in the process of developing the SPORT Surgical System, a robotic surgery system; and

      c.      The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees.

3.      Defendant, Titan, carries on a business or business venture within the State of Florida.

4.      Defendant, Titan, entered into a contract in the State of Florida that required performance within the State of Florida. Titan breached that contract by failing to perform acts in Florida that are required to be performed, under the contract, in Florida.

5.      Defendant, Titan, has engaged in substantial and not isolated activity within the State of Florida.

6.      Effective June 1, 2019, Naglreiter MDDO and Titan entered into a Provider Services Agreement (the "PSA"). Under the PSA, Titan retained and engaged Naglreiter MDDO to perform "Services" (as that term is defined in the PSA) and produce and deliver "Deliverables" (as that term is defined in the PSA), as set forth in one or more separate Statements of Work (each, generally referred to as an "SOW" and collectively the "SOWs") to be mutually executed and agreed to by the parties. A copy of the PSA is attached as Exhibit "A." Naglreiter MDDO entered into the PSA with Titan in reliance upon representations from Titan that Titan was solvent, had access to capital, and would timely and fully pay Naglreiter MDDO for the services it would render to Titan under the PSA pursuant to one or more mutually agreeable and executed SOWs.

7.     On August 3, 2019, but effective retroactively to June 1, 2019, Naglreiter MDDO and Titan mutually executed a Statement of Work – Instruments Program (the "SOW-INS"), under which the parties agreed Naglreiter MDDO would provide to Titan the design for certain multi-articulated instruments that would be part of the Titan SPORT Surgical System.  The PSA contains a confidentiality provision that precludes Naglreiter MDDO from attaching the SOW-INS as an exhibit.  Naglreiter MDDO entered into the SOW-INS with Titan in reliance upon representations from Titan that Titan was solvent, had access to capital, and would timely and fully pay Naglreiter MDDO for the services it would render to Titan under the PSA and the SOW-INS.

8.     Also on August 3, 2019, but effective retroactively to June 1, 2019, Naglreiter MDDO and Titan mutually executed a Statement of Work – Camera Insertion Tube Program (the "SOW-CIT"), under which the parties agreed Naglreiter MDDO would provide to Titan the design for a camera insertion tube that would be part of the Titan SPORT Surgical System. The PSA contains a confidentiality provision that precludes Naglreiter MDDO from attaching the SOW-CIT as an exhibit.  Naglreiter MDDO entered into the SOW-CIT with Titan in reliance upon representations from Titan that Titan was solvent, had access to capital, and would timely and fully pay Naglreiter MDDO for the services it would render to Titan under the PSA and SOW-CIT.

9.     Under the PSA, the SOW-INS and the SOW-CIT (together the "Contract Documents"), Naglreiter MDDO was to prepare and issue to Titan one or more monthly invoices. Specifically, on or about the first day of each calendar month, Naglreiter MDDO was to prepare and issue an invoice, for each SOW, for the Total Monthly Prepayment Amount

(as that term is defined in the PSA), representing an advance billing of a percentage of the total budgeted amounts for such calendar month as set forth in each such SOW's budget.

10. Under the PSA and the SOW–INS, Naglreiter MDDO issued the following invoices and sent them, by e-mail, to the address required under the Contract Documents:

    a. An invoice dated August 1, 2019, for the SOW-INS, in the amount of $1,101,958.00 (sent on June 23, 2019);

    b. An invoice dated September 1, 2019, for the SOW–INS, in the amount of $1,049,027.00 (sent on September 1 , 2019);

    c. An invoice dated September 30, 2019, reflecting an adjustment for expenses incurred for the months of August and September, 2019, in the amount of $26,176.76; and

    d. An invoice dated October 1, 2019, for the SOW-INS, in the amount of $1,217,457.50 (sent on September 27, 2019).

11. Under the PSA and the SOW–CIT, Naglreiter MDDO issued the following invoices and sent them, by e-mail, to the address required under the Contract Documents:

    a. An invoice dated August 1, 2019, for the SOW-CIT, in the amount of $467,215.00 (sent on July 23, 2019), which was revised on August 20, 2019, and re-sent on that day, in the amount of $612,471.00;

    b. An invoice dated September 1, 2019, for the SOW–CIT, in the amount of $612,471.00 (sent on September 1, 2019);

    c. An invoice dated September 30, 2019, reflecting an adjustment for expenses incurred for the months of August & September, 2019, in the amount of $12,274.37; and

    d.  An invoice dated October 1, 2019, for the SOW-CIT, in the amount of $364,308.00 (sent on September 27, 2019).

12. Titan was obligated to pay the invoices issued in August, 2019, identified above (the "August Invoices"), within ten business days of the dates sent.  However, Titan did not pay the amounts owed on the August Invoices when due, nor did Titan advise Naglreiter MDDO that Titan in good faith disputed the invoices or any portions thereof.  Titan has paid nothing on the August Invoices.

13. Titan was obligated to pay both invoices dated September 1, 2019, identified above (the "September Invoices"), within ten business days of September 1, 2019, making the payment due date September 17, 2019. However, Titan did not pay the amounts owed on the September Invoices when due, nor did Titan advise Naglreiter MDDO that Titan in good faith disputed the invoices or any portions thereof.  Titan has paid nothing on the September Invoices.

14. Titan has paid nothing on the invoices dated September 30, 2019, and October 1, 2019, respectively.

15. By letter dated October 4, 2019, from Naglreiter MDDO to Titan, Naglreiter MDDO declared Titan in default under the Contract Documents for failure to make required, past-due payments and advised Titan that it had five business days to cure the default.

16. By letter dated October 11, 2019, from Titan to Naglreiter, Titan claimed to terminate the Contract Documents, and instructed Naglreiter MDDO to perform no further services under them. Titan thus terminated the Contract Documents for convenience, as permitted by Section 11.2 of the PSA, effective October 11, 2019.

17. By letter dated October 14, 2019, Naglreiter MDDO acknowledged Titan had terminated the Contract Documents for convenience, and it also advised Titan it was terminating the Contract Documents due to Titan's failure to cure payment defaults within five business days of the October 4, 2019 letter, as required under the PSA.

18. As a result of Titan's defaults under the Contract Documents, Naglreiter has been damaged in its business and property.

19. Naglreiter MDDO has been compelled to employ its undersigned attorneys and is obligated to pay them a reasonable fee; such fee is recoverable under the Contract Documents.

20. All conditions precedent to the relief demanded herein have been performed or have occurred.

WHEREFORE, Naglreiter MDDO demands entry of a judgment in its favor and against Titan for its damages, together with interest, costs, and reasonable attorneys' fees.

## COUNT II – UNJUST ENRICHMENT

21. Paragraphs 1 through 5 above are realleged.

22. During the time period from August 1, 2019, through October 14, 2019, Naglreiter MDDO performed services for the benefit of Titan in reliance upon Titan's promises and representations that it would pay Naglreiter MDDO, because it was solvent, had access to capital, and would promptly pay Naglreiter MDDO in full for all unpaid past and future services it would render to Titan. Naglreiter MDDO reasonably relied on these representations and promises. These representations were false, and known by Titan to be false at the time made.

23. The work performed by Naglreiter MDDO, and the sums spent by Naglreiter MDDO to purchase the Capital Assets identified on the attached Exhibit "B," conferred a substantial and material benefit on Titan. It resulted in, among other things, design specification that led to improvements to the SPORT Surgical System (the "Design Specifications"), thus enabling Titan to apply for and obtain U. S. Patent no. 10,398,287 (the "Patent"). The work performed by Naglreiter MDDO, and the sums spent by Naglreiter MDDO to purchase the Capital Assets identified on the attached Exhibit "B" (the "Capital Assets"), also resulted in the design, development and creation of prototypes of multi-articulated instruments and a camera insertion tube (the "Prototypes") now part of the Titan SPORT Surgical System, as well as the design, development and creation of prototypes of multi-articulated instruments and camera insertion tubes which formed the basis for third parties (including Plexus Corp. and Cambridge Design Partnership, Inc.) to construct advanced prototypes (the "NextGen Prototypes") now part of the Titan SPORT Surgical System.

24. In a letter to its shareholders dated February 23, 2020, Titan advised that development of the SPORT Surgical System was suspended because Titan did not have funds necessary to continue. Titan further advised it intended to seek new capital so that it could "restart and complete product development, proceed to product verification and validation, and submit an Investigative Device Exemption . . . application to the FDA to begin human confirmatory studies." In other words, Titan advised its shareholders that it intends to continue to develop the SPORT Surgical System, which heretofore has been largely designed, developed and built by Naglreiter MDDO, but it did not advise its shareholders that it will pay Naglreiter MDDO for the work performed or the benefits provided to Titan.

25. By virtue of the foregoing, Naglreiter has conferred benefits on Titan, which has knowledge thereof.

26. By virtue of the foregoing, Titan has voluntarily accepted the benefits conferred upon it by Naglreiter MDDO, and retains them.

27. By virtue of the foregoing, the circumstances are such that it would be inequitable for Titan to retain the benefits conferred upon it by Naglreiter MDDO without paying fair market value for them.

28. The Design Specifications, Capital Assets, Patent, Prototypes and NetGen Prototypes are unique. Naglreiter MDDO has no adequate remedy at law.

29. By virtue of Titan's actions alleged above, Naglreiter MDDO has been damaged in its business and property. Such damages include such money that Naglreiter MDDO expended in good faith, which included costs and expenses (labor, supplies, and use of quality systems and project management) related to work product, Deliverables (which included prototypes), Intellectual Property (which includes patents and patentable rights) and purchases, handling, calibration, maintenance and storage of the Capital Assets.

30. All conditions precedent to the relief demanded herein have been performed or have occurred.

WHEREFORE, Naglreiter MDDO demands:

A. Entry of a judgment in its favor and against Titan for its damages, for the amount by which Titan has been unjustly enriched, together with prejudgment interest;

B. A constructive trust over the Design Specifications;

C. A constructive trust over the Capital Assets;

   D.  A constructive trust over the Patent;

   E.  A constructive trust over the Prototypes;

   F.  A constructive trust over the NextGen Prototypes;

   G.  An order authorizing Naglreiter MDDO to sell the Design Specifications, Capital Assets, the Patent, the Prototypes, and the NextGen Prototypes, to enforce its rights under its constructive trusts; and

   H.  Court costs.

Dated: <u>February 14, 2020</u>.     Respectfully submitted,

                Akerman LLP
                <u>/s/ Ashley A. Sawyer, Esq.</u>
                Mark J. Bernet
                Florida Bar No. 606359
                401 E. Jackson Street, Suite 1700
                Tampa, Florida 33602
                Telephone: (813) 223-7333
                Facsimile: (813) 218-5495
                Email: mark.bernet@akerman.com
                Email: judy.barton@akerman.com

                *and*

                Ashley A. Sawyer
                Florida Bar No. 0012131
                350 E. Las Olas Blvd., Suite 1600
                Fort Lauderdale, FL 33301
                Telephone: (954) 463-2700
                Email: ashley.sawyer@akerman.com
                Email: jill.parnes@akerman.com

                *Counsel for Naglreiter Consulting, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify a true and correct copy of the foregoing was served on February 14, 2020, via CM-ECF on all counsel of record.

/s/ Ashley A. Sawyer, Esq.