**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE No. 19-62574-Civ-COOKE/HUNT**

NAGLREITER CONSULTING, LLC,
d/b/a NAGLREITER MDDO,

                Plaintiff,

v.

TITAN MEDICAL INC.,

                Defendant.

_____/

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIM**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Naglreiter Consulting, LLC d/b/a Naglreiter MDDO ("Naglreiter"), pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss Counts II (fraudulent inducement), III (negligent misrepresentation), IV (indemnification), V (conversion), and VI (civil theft) from the Amended Counterclaim filed by Defendant, Titan Medical Inc. ("Titan"), (Am. Countercl., ECF No. 38 at 10-27), for failure to state a claim. Additionally, and alternatively, Naglreiter moves to dismiss and/or strike Titan's claims for "wrongful act damages" as part of its relief in Counts I, II, and III.[1]

## Introduction

The dispute between Naglreiter and Titan involves nothing more than a simple breach of contract. Naglreiter and Titan contracted for Naglreiter to provide design and development services to Titan pertaining to sophisticated medical instruments. Naglreiter performed under the Agreements (as defined below) and billed Titan accordingly, but Titan refused to pay. This forced Naglreiter to file suit for breach of contract to recover monies owed. In response, Titan filed a five-count counterclaim raising claims for breach of contract, fraudulent inducement, negligent misrepresentation, indemnification, and conversion. (ECF No. 14). Naglreiter moved to dismiss Titan's original counterclaim on numerous grounds. (Mot. to Dismiss, ECF No. 21). With Naglreiter's consent, Titan filed an eight-count Amended Counterclaim restating their original counts and adding additional claims for replevin, civil theft, and injunctive relief. (ECF No. 38 at 10-27, hereinafter the "Counterclaim").

Although Titan corrected some of the pleading deficiencies in its original counterclaim, its current Counterclaim has many of the same problems. First, Titan still fails to plead facts with sufficient particularity to support its fraudulent inducement and negligent misrepresentation claims in violation of Rule 9(b). Titan's fraud and negligence claims allege Naglreiter misrepresented it could adequately provide services to Titan, but the merger clause in the Agreements bars these claims. Moreover, Titan's fraudulent inducement and negligent misrepresentation claims should be dismissed with prejudice because the allegations are not separate from the performance of the Agreements and thus are barred by the independent tort doctrine.

Titan's claim for indemnification also fails as a matter of law because the Agreements' indemnification provision does not permit Titan to bring a first-party indemnification claim against

---

[1] Naglreiter is contemporaneously filing its *Plaintiff's Motion to Strike Affirmative Defenses and Incorporated Memorandum of Law*, ECF No. __, and joins in that Motion to Strike pursuant to Rule 12(g)(1), Fed. R. Civ. P.

52520348;2

Naglreiter based upon Naglreiter's alleged breach of contract. Titan's indemnification claim also duplicates its breach of contract claim, and as such improperly attempts to circumvent the contractual remedies the Parties bargained for.

Titan's claim for conversion fails because it is not independent of its breach of contract claim. Titan's conversion claim alleges Naglreiter failed to deliver certain personal property pursuant to the Agreements. Titan's breach of contract claim likewise alleges Naglreiter failed to deliver certain personal Titan's property as required by the terms of the Agreements. These allegations are identical. Therefore, Titan's conversion claim should be dismissed with prejudice as duplicative.

Next, Titan's civil theft claim must be dismissed for failure to state a claim because (1) Titan does not allege that Naglreiter acted with criminal intent to deprive Titan of its property, and (2) where the property at issue is also the subject of a contract between the Parties, as it is here, Titan must further allege a sophisticated scheme of deceit and fraud, which it has failed to do.

Finally, Titan seeks "wrongful act damages" as a portion of its relief in Counts I – III. This requested relief should be dismissed and/or stricken from the Counterclaim because (1) Titan has failed to allege any facts showing it is entitled to damages pursuant to Florida's wrongful act doctrine (i.e., that Naglreiter's wrongful acts have made Titan incur attorneys' fees in maintaining or defending a lawsuit with a third party); and (2) it is yet another attempt to circumvent the contractual remedies it bargained for.

### Allegations Relevant to this Motion[2]

Titan and Naglreiter contracted for Naglreiter to perform services to assist in designing and developing Titan's medical device products. (*See* Am. Countercl. ¶¶ 22-24, ECF No. 38). Specifically, effective June 1, 2019, Naglreiter and Titan entered into a Provider Services Agreement ("PSA"), under which Naglreiter agreed to perform services to assist in designing and developing Titan's products as set forth in forthcoming Statements of Work (each a "SOW"), and Titan agreed to pay Naglreiter for services to be rendered. (*See id.* at ¶¶ 22-23). On August 3, 2019, Titan entered into two SOWs with Naglreiter: (1) Statement of Work – Instruments Program ("SOW-INS") and (2) Statement of Work – Camera Insertion Tube Program (the "SOW-CIT") (the PSA, SOW-INS, and SOW-CIT are collectively referred to herein as the "Agreements"). (*Id.*

---

[2] The following allegations are assumed true only for purposes of the instant Motion. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

- 3 -

at ¶ 24). The SOWs set forth design projects for Naglreiter to complete and corresponding prices/fees for Titan to pay.

The PSA was attached to Naglreiter's Amended Complaint as Exhibit A[3], (ECF No. 34-1), and was incorporated into Titan's Counterclaim. (*See* Am. Countercl. ¶ 22). The Agreements have thus been incorporated into Naglreiter's Complaint and Titan's Counterclaim, and therefore Naglreiter will cite to and rely on them in this Motion. *See infra* Section I.

The SOWs contain sensitive information Titan does not want filed in the public record. However, Titan agreed Naglreiter may quote and cite to certain provisions within this Motion that Naglreiter deems relevant to this Court's determination. In addition to the SOW provisions Naglreiter quotes in this Motion, the only other information contained within the SOWs relevant to this Motion is the fact that both were executed by Titan on August 3, 2019, and that both SOWs explicitly incorporated the PSA by reference[4] and do not conflict with the PSA in any material respect.[5] (*See* PSA §§ 2.2.3 & 4). Therefore, the SOWs are governed by the PSA.

## **Memorandum of Law**

## I.      **Legal Standard**

Rule 12(b)(6), Fed. R. Civ. P., allows a defendant to move to dismiss a counterclaim that fails to state any claim upon which relief may be granted. When conducting this analysis, the court normally considers only the four corners of the complaint and any attachments thereto. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997). However, a document not physically attached to a counterclaim may be incorporated by reference "if the document's contents are alleged in the complaint[,] no party questions those contents" and the document is central to the case. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Here, Titan expressly incorporated the PSA by reference in the Counterclaim. (*See* Am. Countercl. ¶ 22). Moreover, the PSA is central to this case as Titan discusses, cites and relies on it

---

[3] Naglreiter has redacted certain confidential pricing and commercially sensitive information from Exhibits A and B to the PSA. The redacted information has no bearing on the issues herein.

[4] In addition to PSA § 2.2.3, both SOWs provide: "This SOW incorporates by reference the [PSA] between the parties dated June 1, 2019."

[5] Section 6 of both SOWs provides: "This SOW (including all schedules, exhibits and addenda that may be included herein or attached hereto) constitutes the Parties' entire understanding and agreement with respect to the work related to the Project referenced above, and supersedes all prior SOWs (original or amended) regarding the Project."

in all eight of its claims.[6] Thus, the PSA has been incorporated into the Counterclaim and should be treated as if it was physically attached to it as an exhibit, permitting the Court to consider it when ruling on this Motion to Dismiss without converting it into one for summary judgment. *See Day*, 400 F.3d at 1276. Further, "[i]t is well established that, where a cause of action stems from a contract that is attached to the complaint as an exhibit, the contract is considered part of the record for a Rule 12(b)(6) motion to dismiss. If the contract demonstrates unambiguously that the plaintiff's relief is not merited, the claims should be dismissed." *Siedle v. Nat'l Assoc. of Sec. Dealers, Inc.*, 248 F. Supp. 2d 1140, 1143 (M.D. Fla. 2002) (collecting cases).

## II.    Titan's Fraudulent Inducement and Negligent Misrepresentation Claims Must be Dismissed

Titan again riddles its Counterclaim with fraud-type allegations, and while Titan provides more detail than in its original pleading, it has still failed to state a claim for fraudulent inducement and negligent misrepresentation (together, the "fraud claims"). First, to support its fraud claims, Titan relies on generalities that Naglreiter's representatives made representations that it had the skill, qualifications, and expertise to perform the contemplated services, but Titan neglects to provide any specifics about what exactly Naglreiter's representatives said or when they said it. Titan also relies on purported representations Naglreiter made to Plexus's agents and representatives, without pleading that such representations were made to induce Titan to take certain actions. (*See* Am. Countercl. ¶ 11). These vague and unspecific assertions fail to satisfy Rule 9(b)'s heightened pleading standard which warrants dismissal.

However, this dismissal should be with prejudice because: (1) the fraud claims are barred by the PSA's representations and merger clauses; and (2) Naglreiter's alleged fraudulent conduct—that it represented it was capable and qualified to timely complete the design and development of Titan's products to its satisfaction—is the *same* conduct Titan alleges breached the Agreements. Because the duty breached and purported harm are identical, Titan's fraud claims must be dismissed as duplicative.

### A.    The Fraudulent Inducement and Negligent Misrepresentation Claims Fail to Meet the Pleading Requirements of Rule 9(b).

---

[6] The PSA or SOWs are not explicitly referenced in Titan's Count VII for civil theft, but to the extent Titan meant to include a paragraph incorporating the general allegations in paragraphs 1-41, the general allegations supporting Titan's civil theft claim do rely on the terms of the Agreements (e.g., paragraphs 36-37 alleging the PSA provides that the property at issue is the sole and exclusive property of Titan).

52520348;2

As an initial matter, Titan's fraudulent inducement and negligent misrepresentation claims fail to satisfy the heightened pleading requirements of Rule 9(b), Fed. R. Civ. P.[7] "Where a cause of action alleges fraud, [Rule] 9(b) must be satisfied in addition to the more relaxed standard of Rule 8." *Barnett v. Blane*, No. 11-14345-Civ, 2013 WL 1001963, at *2 (S.D. Fla. Mar. 13, 2013) (Scola, J.). Rule 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Barnett*, 2013 WL 1001963, at *2 (quoting *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008)).

Rule 9(b) is satisfied if the complaint sets forth "(1) **precisely what statements were made** in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (emphasis added) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). Simply put, a party alleging fraud must plead "the who, what, when, and where [of the fraud] *before* access to the discovery process is granted." *Infante v. Bank of Am. Corp.*, 680 F. Supp. 2d 1298, 1302–03 (S.D. Fla. 2009) (emphasis in original), *aff'd*, 468 F. App'x 918 (11th Cir. 2012).

In support of its fraud claims, Titan makes the following general allegations that are incorporated into each and every count:

- "In or about March and April 2018," Naglreiter's representative Brett Naglreiter, convinced non-party Plexus "that Naglreiter had the skill, qualifications, and expertise to advance the design and development of two of Titan's products[.]" (Am. Countercl. ¶ 11).

- In April and May 2018, Naglreiter's representatives again "touted Neglreiter's qualifications and competencies" to Plexus's representatives and "Titan's agents and representatives, including Perry Genova,"[8] during presentations at Naglreiter's facility. (*Id.* at ¶ 12).

---

[7] Rule 9(b)'s heightened pleading standard applies equally to negligent misrepresentation claims. *See Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014).

[8] Although Titan alleges these purported representations were made to "Titan's agents and representatives," plural, Titan only identifies a single representative—Perry Genova. Naglreiter is

52520348;2

- "During this same period, April and May 2018," Naglreiter represented solely to Plexus's representatives that "it was capable and qualified to timely complete the design and development of Titan's products consistent with Titan's specifications and requirements and touted its capabilities and facilities to Plexus's agents and representatives." (*Id.* at ¶ 13).

- Titan describes the above representations as "Naglreiter's promised performance" under the Naglreiter-Plexus agreements which Titan was not a party to. (*See id.* at ¶ 15).

The above allegations fail to support Titan's fraud claims for several reasons. First, these purported representations constituting fraud are mere generalities about Naglreiter's skill, qualifications, and competency to perform the work required by Titan—in other words, they are essentially opinions and not a knowing false statement of fact which fraud claims require. *See La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 713 & 713 n.2 (Fla. 5th DCA 1998) (A representation that is essentially an opinion cannot form the basis of a fraud claim, which requires a knowing false statement of fact made with the intent that it cause action in reliance and damages.). Did Naglreiter make any factual representations such as number of employees, the educational background and experience of its engineers, or previous accomplishments that are facts that can be proven false at the time they were made? If so, Titan does not allege any. Titan's conclusory allegations that Naglreiter knew the alleged false statements were false at the time they were made does not suffice. (*See, e.g.*, Am. Countercl. ¶ 49). Titan's allegations do not provide any specific facts supporting the pleading requirement that Naglreiter made a knowing false statement of fact at any time (i.e., how was Naglreiter not qualified, able, or equipped to perform the services?).[9]

Second, Titan does not sufficiently allege the time these representations were made. Providing a two-to-three-month timespan of when the representations were made does not satisfy Rule 9(b). *See Anthony Distribs., Inc. v. Miller Brewing Co.*, 904 F. Supp. 1363, 1365 (M.D. Fla. 1995) (finding the plaintiff "should specifically identify the individuals who made the alleged

entitled to know which other, if any, of Titan's representatives were present during these purported representations, and Titan is required to identify them in order to satisfy Rule 9(b).

[9] For example, a proper allegation might be something to the effect of: "In a telephone conversation occurring on [Date], Naglreiter, through its agent [John Smith] told Titan's representative [Jane Doe] that Naglreiter employed four engineers who graduated from Massachusetts Institute of Technology and that all had 15 or more years' of experience designing and manufacturing sophisticated medical devices like the devises Titan wanted to develop." Titan's allegations do not come close to this.

52520348;2

misrepresentations, the time [and place] of the alleged fraud []"). Third, most of the above representations were allegedly made to a non-party, Plexus, not Titan. Simply put, allegations that Naglreiter made representations to *Plexus* to induce *Plexus* to enter into a contractual relationship with it, and that *Plexus* acted in justifiable reliance, does not support a fraudulent inducement claim brought by *Titan*.[10] *See, e.g., Eclipse Medical, Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1341 n.1 (S.D. Fla. 1999) (elements of a fraudulent inducement claim include that defendant intended the representation would induce *plaintiff* to enter into a contractual relationship and the *plaintiff* was injured by acting in justifiable reliance thereof).

Perhaps the most fatal flaw to Titan's fraud claims premised on Naglreiter's purported misrepresentations pertaining to its skill, qualifications, competency etc. to perform the work is Titan's admission that in mid-2019 "Titan also *realized* that, *despite representations to the contrary*, Naglreiter was not qualified, able, or equipped to perform the services contemplated by the parties' agreements." (Am. Countercl. ¶ 30) (emphasis added). Titan *admits* that it knew Naglreiter's representations about its qualifications and ability to perform the work required by Agreements were *false* in "mid-2019," *weeks before Titan entered into the SOWs* on August 3, 2019—the same SOWs that Naglreiter's misrepresentations allegedly induced Titan to enter. (*Compare id.* at ¶ 30 *with id.* at ¶ 24 (Titan entered into the SOWs on August 3, 2019)). Titan could not, as a matter of law and logic, have justifiably relied on Naglreiter's representations about its qualifications when it knew those representations were false. *See Eclipse Medical*, 262 F. Supp. 2d at 1341 n.1 (The elements of fraudulent inducement include "that the plaintiff was injured by acting in justifiable reliance on the misrepresentation."). Therefore, these allegations fail to state a fraudulent inducement or negligent misrepresentation claim as a matter of law.

Next, Titan alleges that as early as December 2018, its representatives "learned that the products were below far below any reasonable or acceptable quality and did not perform as required by the agreements between Naglreiter and Plexus." (Am. Countercl. ¶ 18). Around this time, Titan alleges that Naglreiter made representations that placed the blame for the substandard performance on Plexus. However, these allegations also fail to state a claim under Rule 9(b). Titan alleges:

---

[10] Tellingly, Plexus has never accused Naglreiter of fraud, nor does Titan claim that Plexus has ever made any such allegation.

52520348;2

- "Brett Naglreiter and other Naglreiter representatives acknowledged that they had issues but placed the blame for their substandard performance on Plexus." (Am. Countercl. ¶ 20). But Titan does not identify who these "other Naglreiter representatives" are.

- Titan alleges that Naglreiter continued to blame its lack of performance on Plexus, but fails to identify who made these representations, who they were made to, or when they were made, only identifying that they were made "over the ensuing months." (*See id.* at ¶ 21).

- "Relying on Naglreiter's representations regarding its capabilities and facilities for performing work needed by Titan and Naglreiter's claims that its failures to perform thus far were the fault of Plexus, . . . in June 2019, Titan entered into [the PSA] directly with Naglreiter." (*Id.* at ¶ 22).

These allegations fail for the same reasons as the others. Without more, Naglreiter allegedly placing the blame on Plexus for various problems is essentially an opinion and not a factual statement that can be proven true or false at trial. *See La Pesca Grande Charters*, 704 So. 2d at 712-13.[11] Titan's allegations also similarly fail to specify the time and place the representations were made and the person or persons who made them.

Finally, in support of its fraud claims and in addition to these general allegations, Titan alleges:

> As set forth above, separate and apart from its breaches of the parties' agreements, including its inability and failure to perform the services contemplated by the parties' agreements, Naglreiter made false statements of material fact to Titan and omitted material facts to induce Titan to enter into the PSA and SOWs, including, but not limited to, inducing Titan and its agents to believe Naglreiter was qualified, equipped and able to perform the services contemplated by the parties' agreement, although it was not so qualified, equipped or able, and Naglreiter induced Titan to believe the parties were agreeing to modified payment schedules when it, instead, sued Titan for non-payment.

(Am. Countercl. ¶ 48; *see also id.* at ¶ 55 (a substantially similar allegation supporting Titan's negligent misrepresentation claim)).

---

[11] By way of example, if Naglreiter told Titan that the problems were caused by Plexus failing to provide Naglreiter with 300 widgets on December 1, 2018 as required, but Plexus did in fact make the delivery, then that would be a knowing false statement of fact that could form the basis of a fraudulent inducement claim. But Titan does not allege any factual representations purportedly made by Naglreiter that could support Titan's fraud claims. *See La Pesca Grande*, 704 So. 2d at 711-14 (Holding that the allegations "that the engines had recently been rebuilt and had less than 400 hours and that the turbos were new" were statements of fact that could support a fraudulent inducement claim, but the allegations that "the hull was in sound, seaworthy condition; and [] that the fire extinguisher system was in sound working order" could not.).

52520348;2

In apparent acknowledgement that a fraud in the *performance* claim is barred by the independent tort doctrine, Titan specifically exempts Naglreiter's inability and failure to perform the services under the Agreements from its fraudulent inducement claim. *See infra* Section II.C. (moving to dismiss Titan's fraud claims on this basis). Moreover, the only apparent misrepresentation is that Naglreiter represented that it was qualified, equipped and able to perform the services contemplated by the Agreements. Again, this allegation does not state a fraud claim as a matter of law.

Titan also alleges that "Naglreiter induced Titan to believe the parties were agreeing to modified payment schedules when it, instead, sued Titan for non-payment." (Am. Countercl. ¶¶ 48, 55). Titan alleges that this representation took place in "August and September 2019," (*id.* at ¶ 33), when the PSA and SOWs had already been signed, (*id.* at ¶ 24). But a representation made after the act Naglreiter allegedly tried to induce—Titan entering into the PSA and SOWs—cannot form the basis of a fraudulent inducement (or Titan's negligent misrepresentation) claim because it destroys the necessary reliance element. *See Eclipse Medical*, 262 F. Supp. 2d at 1347-48 (as a matter of law, a party cannot rely on an alleged representation that occurred after it entered into the contract at issue).

Additionally, Titan fails to adequately allege what Naglreiter obtained because of the fraud and, relatedly, how Titan was damaged. Although Titan alleges the representations induced it to enter into the PSA and SOWs, it does not allege it ever paid Naglreiter money pursuant to the Agreements. All Titan alleges is that Naglreiter obtained Agreements executed by Titan under which Naglreiter performed work without payment—hardly a benefit to Naglreiter.

Titan's allegations concerning the statements or misrepresentations Naglreiter made are either entirely conclusory and lack the specificity required by Rule 9(b), premised off of statements of opinion, or rely on statements that occurred after Titan entered into the Agreements these statements purportedly induced Titan to enter. Therefore, Titan's fraud claims must be dismissed.

**B.    Titan's Fraudulent Inducement and Negligent Misrepresentation Claims Are Barred by The Merger Clause in the Agreements.**

The Agreements bar Titan's fraud claims based on Naglreiter's alleged representations that it was "qualified, equipped and able to perform the services contemplated by the parties' agreement." The Agreements expressly bar any reliance on these alleged representations to the extent they are not contained in the Agreements:

**Service and Deliverable Warranties.** . . . <u>**Unless otherwise specifically provided in this Agreement or a SOW, Provider makes no representations or warranties of any kind regarding Services or Deliverables**</u>, whether express or implied, including without limitation any warranty covering a fitness for a particular purpose, efficacy in humans or safety for human use. Any and all additional warranties of Provider must be set forth in writing in an individual SOW signed by Provider.

(PSA § 4) (emphasis added). And:

This Agreement (including all schedules, exhibits and addenda that may be attached hereto and all executed SOWs issued pursuant to this Agreement) constitutes the Parties' <u>**entire understanding and agreement**</u> **with respect to the subject matter hereof and thereof, and supersedes all prior and contemporaneous agreements, representations and understandings, whether written or oral, between the Parties regarding the subject matters hereof (and thereof), including without limitation any request for proposal, purchase order, or other preprinted terms or documents provided by either Party**. To avoid any doubt, this Agreement shall have no effect on any confidentiality or nondisclosure agreement entered into by the Parties prior to the Effective Date set forth herein but shall govern any and all confidential discussion occurring after the Effective Date unless this Agreement otherwise expressly so provides to the contrary.

(PSA § 20.1) (emphasis added). The PSA, including the representations clause in Section 4 and the merger clause contained in Section 20.1, was incorporated by reference in each SOW. (*See supra* at 4 and notes 4-5).

A merger or integration clause bars recovery for a fraud based on oral representations because "[a] party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Freeman*, 2013 WL 2151723, at *9 (quoting *Hillcrest Pacific Corp. v. Yamamura*, 727 So. 2d 1053, 1056 (Fla. 4th DCA 1999)) (internal quotations omitted); *see also Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So. 2d 924, 928 (Fla. 4th DCA 2002) (holding that an integration clause in a purchase agreement barred fraud claim based on alleged misrepresentations regarding commissions when the commissions were adequately covered by the agreement).

It is undisputed the alleged misrepresentations[12] are expressly covered by the Agreements. For example, the PSA contains the following representations in relevant part:

From time to time during the Term, Titan will advise in writing NMDDO of the nature and scope of the services and deliverables desired in sufficient detail for NMDDO to prepare and provide a meaningful Proposal (as defined immediately

---

[12] *See* Am. Countercl. ¶¶ 11-13, 20-22, 33, 48 & 55. The alleged misrepresentations are quoted above at 5-9.

below). NMDDO will promptly thereafter advise Titan in writing as to whether it wishes to provide such services and deliverables, and if so, it will provide Titan with a written proposal in support of NMDDO's expression of interest ("Proposal"), which Proposal shall include proposed project timelines, budgets, schedules, including estimated Total Monthly Prepayment Amount. **Provider will not provide any Proposal unless it reasonably believes that it has the requisite expertise, experience, resources and facilities to perform the Services and provide the Deliverables in a timely and professional manner**. If the Proposal, or a revised version thereof, is acceptable to Titan, the Parties will mutually prepare, execute and deliver a SOW, and attach a copy of any such Proposal thereto. This provision shall apply to work intending to create new SOWs, and not changes to any existing SOW (which are covered by the provisions set forth in Section 2.7 below).

(PSA § 2.2.1) (emphasis added). And:

**Provider will use commercially reasonable efforts to perform and render the Services and provide the Deliverables in a timely, professional, competent and diligent manner**. **Provider will ensure that it has sufficient, qualified, skilled and experienced personnel to perform the Services** . . . . Provider agrees to render Services in accordance with the plan, specifications and/or other requirements set out in the Statement(s) of Work. Notwithstanding the foregoing provisions of this Section, Client hereby acknowledges and agrees that Provider cannot guarantee the commercial success or results of any development activities (including the commercial acceptance of any Deliverable).

(PSA § 3.1) (emphasis added).

To be clear, the PSA was the vehicle by which Titan would request services and Naglreiter would agree to perform them, (*see* Am. Countercl. ¶ 23 ("Pursuant to the PSA, Naglreiter agreed to perform services and provide products for Titan as set forth in forthcoming [SOWs].")), and the PSA governed both SOWs. *See supra* at 4, notes 4-5. By the express terms of the PSA, and consistent with Titan's allegations, Naglreiter would only provide a Proposal for Services if "it reasonably believes that it has the requisite expertise, experience, resources and facilities to perform the Services and provide the Deliverables in a timely and professional manner." (PSA § 2.2.1). It is undisputed that subsequent to this Naglreiter did submit a Proposal for each SOW at issue. (*See* Am. Countercl. ¶¶ 24, 30). Naglreiter's representations concerning its capability to perform the work under each SOW primarily form the basis of Titan's claims.

Where, as here, the merger and representation provisions expressly provide the terms of the contracts constitute the Parties' *entire understanding and agreement*, a claim for fraud and/or negligence cannot be based on an alleged misrepresentation made outside of that contract.

These provisions also make unreasonable as a matter of law Titan's claim it was induced

to enter the PSA and SOWs in reliance on any alleged representations made outside of the Agreements.[13] As a result, to the extent that Titan's claims for fraudulent inducement and negligent misrepresentation are based upon alleged misrepresentations or omissions made prior to entering the Agreements, the claims should be dismissed with prejudice. *See World Fuel Serv's, Inc. v. Thrifty Propane, Inc.*, No. 16-cv-20847, 2016 WL 11547771, at *8 (S.D. Fla. July 15, 2016) (O'Sullivan, M.J.).[14]

To the extent Titan bases these claims on the representations found in the Agreements, they also must be dismissed with prejudice as they are not independent from a breach of contract claim.

### C. Titan's Fraudulent Inducement and Negligent Misrepresentation Claims Are Not Independent of its Breach of Contract Claim.

Titan's fraud claims must be dismissed because the alleged fraud is not separate from contract performance and is the same conduct that forms the basis of Titan's breach of contract claim. "[I]n order to bring a valid tort claim, a party [] must demonstrate all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim." *Tiara Condo. Ass'n Inc. v. Marsch &McLennan Cos.*, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J., concurring) (citing *Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982)). Said differently, "a breach of contract, alone, cannot constitute a cause of action in tort…. It is only when the breach of contract is attended by some additional conduct [amounting] to an independent tort that such breach can constitute [a tort]." *Id.* at 408-09 (quoting *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co*., 482 So. 2d 518, 519 (Fla. 3d DCA 1986)). "[W]hen the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to

---

[13] Titan's allegations that it relied on Naglreiter's representations concerning its ability to perform this work when entering the SOWs are belied by the fact that Titan alleges it conducted inspections and reviews of Naglreiter's work in <u>mid-2019</u>, (*see* Am. Countercl. ¶ 30), yet executed the SOWs on August 3, 2019. (*See id.* at ¶ 24) (SOWs were executed by Titan on 8/03/19). Titan goes even further and pleads that during these inspections in <u>mid-2019</u>, "*Titan also realized that*, despite its representations to the contrary, *Naglreiter was not qualified, able, or equipped to perform the services contemplated by the parties' agreements*." (*Id.* at ¶ 30) (emphasis added). Titan cannot, as a matter of law, have justifiably relied upon alleged misrepresentations that it, by its own allegations, claimed it knew were false at the time it entered into the SOWs. Clearly, Titan has admitted that it did not rely upon these representations when signing the SOWs weeks after it says it knew Naglreiter was unable to perform *under them*. (*See id.* at ¶¶ 24, 30).

[14] This persuasive opinion is a Report and Recommendation from Magistrate Judge O'Sullivan. In this case, the time for a party to object to the R&R had elapsed but prior to the Court entering an order adopting same the parties settled and the case was dismissed.

52520348;2

obtain a better bargain than it made by turning a breach of contract into a tort for economic loss." *Id.* at 409 (quoting *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 542 (Fla. 2004))[15]; *see also Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, No. 13-61687, 2014 WL 2215770, at *5 (S.D. Fla. May 29, 2014) (Rosenbaum, J.).

Following these principles, a fraud claim must be dismissed when the alleged fraud is not separate from contract performance. *See Kaye*, 2014 WL 2215770, at *5; *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017) ("It is well settled in Florida that, where alleged misrepresentations relate to matters already covered in a written contract, such representations are not actionable in fraud."); *Joyeria Paris, SRL v. Gus & Eric Custom Servs., Inc.*, No. 13-22215-CIV, 2013 WL 6633175, at *2-4 (S.D. Fla. Dec. 17, 2013); *see also Freeman v. Sharpe Res. Corp.*, No. 6:12-CV-1584-ORL-22T, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (dismissing plaintiff's fraud claim when alleged misrepresentation that $1.3 million would be held in escrow and returned to plaintiff if financing did not close within 60 days was an obligation set forth in the parties' contract).

In *Kaye*, plaintiff's fraudulent inducement claim alleged the defendant misrepresented the plaintiff would receive a license to prosecute certain patent infringements and alleged the license agreement the parties entered into was "a sham." 2014 WL 2215770, at *3-5. The *Kaye* court dismissed the fraudulent inducement claim based on contract principles— "a failure to allow [plaintiff] to exercise a right granted to him by the License Agreement is merely a breach of the License Agreement." *Id.* at *5. In *Joyeria Paris*, the court dismissed plaintiff's fraud claim for failure to allege a fraud independent of a breach of contract when the alleged misrepresentation that defendants would accept a half percentage commission on sales of plaintiff's gold was the same conduct that made up plaintiff's claim for breach of contract. 2013 WL 6633175, at *2-4.

Titan's fraud claims are not independent from its breach of contract claim. Titan's breach of contract claim alleges in pertinent part:

> Naglreiter breached the PSA and SOWs by: (1) failing to have the requisite expertise, experience, resources, or facilities to perform the services and provide the deliverables contemplated by the parties' agreements in a timely and professional manner; . . . [and] (3) failing to ensure that it had sufficient, qualified, skilled and experienced personnel to perform the contemplated services . . . .

---

[15] Justice Pariente makes clear the decision in *Tiara Condominium Association*, "does not change this statement of law, but merely explains that it is common law principles of contract, rather than the economic loss rule, that produce this result." *Id.*

(Am. Countercl. ¶ 45).

In comparison, Titan's fraud claims are based upon Naglreiter's alleged representations[16] that "Naglreiter was qualified, equipped and able to perform the services contemplated by the parties' agreement, although it was not so qualified, equipped or able[.]" (Am. Countercl. ¶¶ 48, 55; *see also id.* at ¶¶ 11-13, 24, 30).[17] Naglreiter's alleged misrepresentations are substantively identical to the allegations that form the basis of Titan's breach of contract claim—i.e., that Naglreiter did not have the requisite qualifications, experience, resources/equipment to perform the services under the Agreements. *See Eclipse Medical*, 262 F. Supp. 2d at 1348 (A party cannot travel under a fraud theory under facts interwoven with the alleged breaches of contract because then "it is not a claim based on independent tort allegations, but rather it would be proved by facts identical to those allegedly supporting Plaintiffs' contract claims."). Titan's attempted disclaimer that its fraudulent inducement claim relies upon acts that are "separate and apart from [Naglreiter's] breaches of the parties' agreements, including its inability and failure to perform the services contemplated by the parties' agreements," (*id.* at ¶ 48), does not save it from dismissal.

Magistrate O'Sullivan analyzed similar claims in *World Fuel* under the independent tort doctrine:

> The plaintiff notes that the defendant's breach of contract counterclaim asserts that "[the plaintiff] failed to provide [the defendant] with propane meeting HD5 specifications" and that the fraudulent inducement counterclaim alleges that "[the plaintiff] deliberately made false representations of material facts by representing that it would provide [the defendant] with propane meeting HD5 specifications." Thus, both the breach of contract counterclaim and the fraudulent inducement counterclaim are based on the plaintiff's alleged failure to meet a contractual obligation to provide propane that meets HD5 specifications.

*World Fuel*, 2016 WL 11547771, at *5 (internal citation omitted).[18] Just like in *World Fuel*, Titan's fraud claims allege that Naglreiter falsely represented that it had the capability to and would

---

[16] Although Titan includes the conclusory allegation that Naglreiter "omitted material facts," Titan does not allege any such omissions with the specificity required by Rule 9(b). (*See* Am. Countercl. ¶¶ 48-49).

[17] Titan's allegations that Naglreiter blamed Plexus for its failure to perform are not explicitly covered in the Agreements like Titan's other allegations, but those allegations fail to state a claim as a matter of law for the reasons set forth in Section II.A, above. Additionally, the allegations regarding the modified payment schedules also fail as a matter of law because they occurred after Titan had already entered into the Agreements at issue. *See supra* Section II.A.

[18] *See supra* note 14.

perform consistent with Titan's specifications, and Naglreiter breached the Agreements when it failed to perform as it represented it would. And just as in *World Fuel*, the alleged fraudulent conduct is the same conduct that constitutes a breach in the breach of contract claim. "Accordingly, the defendant has failed to allege a cause of action for fraudulent inducement independent of its breach of contract counterclaim." *Id.* at *7; *see also Merchant One, Inc. v. TLO, Inc.*, No. 19-cv-23719, 2020 WL 248608, at *4 (S.D. Fla. Jan. 16, 2020) (Bloom, J.) ("As alleged, these core allegations constitute the basis for the breach of contract claim and the tort claims . . . [a]s such, the Complaint fails to set forth conduct independent from the acts that breached the agreement, and Plaintiff's tort claims would therefore be barred by the independent tort doctrine.").

Moreover, the obligation for Naglreiter to provide adequate design and development services to Titan is explicit in the Agreements. (*See* PSA §§ 2.2.1 & 3.1). The alleged conduct supporting Titan's breach of contract and fraud-based claims is *exactly* the same, and this Court should not allow Titan to use improper fraud and negligent misrepresentation claims to avoid the remedies it contracted for under the Agreements. *See Seminole Masonry, LLC v. Hodges*, No. 18-60368-Civ-Scola, 2019 WL 687918, at *4 (S.D. Fla. Feb. 19, 2019) (Scola, J.) (Dismissing with prejudice the fraudulent inducement claim because each of the alleged misrepresentations were "included" and "contained" in the agreements at issue.). Just like the fraud claims in *Seminole Masonry*, *Kaye*, *Joyeria Paris*, and *Freeman*, Titan's fraud/negligence claims should be dismissed with prejudice.[19]

## III.    Titan's Indemnification Claim Must Be Dismissed

### A.    New York Law Governs Titan's Claim for Indemnification.

---

[19] To the extent New York law applies to Titan's fraudulent inducement and negligent misrepresentation claims, it is the same as Florida law and also requires dismissal of the claims as a matter of law. *See, e.g., NRW, Inc. v. Bindra*, No. 12-CV-8555 RJS, 2015 WL 3763852, at *3 (S.D.N.Y. June 16, 2015) ("Under both New York and Florida law, such allegations are indistinguishable from a breach of contract claim and cannot support a tort claim for fraud in the inducement."); *see also TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 91 (2d Cir. 2005) ("[T]he duty to disclose must exist separately from the duty to perform under the contract."); *Almeciga v. Center for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 411-12 (S.D.N.Y. 2016) (dismissing the fraudulent concealment claim where the alleged duty to disclosure ("*i.e.* their intention to breach") is inseparable from the duty under contract); *Presnall v. Analogic Corp.*, No. 17-cv-6662 (PKC), 2018 WL 4473337, at *6 (S.D.N.Y. Sept. 18, 2018) ("If the promise concerned the performance of the contract itself, the fraud claim is subject to dismissal as duplicative.").

The PSA provides, "[t]his Agreement shall be governed by the laws of the State of New York without application of its conflicts of laws principles." (PSA § 20.5). Because Titan's claim for indemnification arises out of the PSA, (*see* Am. Countercl. ¶ 61), New York law governs.

**B.      Titan's Indemnification Claim Must Be Dismissed as a Matter of Law.**

Titan's indemnification claim fails for two reasons. First, Titan fails to plead any facts that would bring Titan's claim within the scope of the PSA's indemnification provision. And second, the facts as pleaded clearly demonstrate Titan's indemnification claim is nothing more than a breach of contract claim, warranting dismissal as it is duplicative of Count I.

**1.      The PSA's indemnification clause does not encompass Titan's first-party indemnification claim and therefore fails as a matter of law.**

Most commonly, a cause of action for indemnification is designed to serve "as a mechanism that enables a party liable on a third-party claim, the indemnitee, to shift that loss to another, the indemnitor." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 415–16 (S.D.N.Y. 2011); *Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 690 (1990) (defining indemnity as the situation where "a party held legally liable to plaintiff shifts the entire loss to another"). As such, "the default presumption in New York courts is that indemnification involves liabilities, losses, or claims associated with third-party suits, rather than contractual damages or losses between the contracting parties themselves." *BNP Paribas*, 778 F. Supp. 2d at 416.

And it is well-established "[a]n action 'does not become an action for indemnity merely because the pleader has so denominated it.'" *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 783 F.2d 346, 350 (2d Cir. 1986) (quoting *Bunker v. Bunker*, 80 A.D.2d 817, 817, 437 N.Y.S.2d 326, 328 (1st Dep't 1981)). Instead, indemnification clauses are strictly construed "so as not to read into [them] any obligations the parties never intended to assume." *Haynes v. Kleinewefers and Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990). The language must be heavily scrutinized to ensure that the parties shared an "unmistakable intention" to indemnify each other. *CVS Pharmacy, Inc. v. Press Am., Inc.*, 377 F. Supp. 3d 359, 378 (S.D.N.Y. 2019).

Importantly, unless the subject indemnification clause contains "unmistakably clear" language that the parties intended it to encompass first-party claims, "an agreement between two parties 'to indemnify' each other does not mean that one party's failure to perform gives rise to a claim for indemnification." *Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 916 F.3d 116, 125 (2d Cir. 2019). "Unless the indemnification clause refers exclusively or unequivocally to claims between the indemnitor and indemnitee, the

- 17 -

court must find the agreement to be lacking evidence of the required intent to cover such claims." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 21 (2d Cir. 1996).

Titan does not allege it suffered losses or damages in an action by a third-party. Instead, Titan asserts a first-party claim against Naglreiter for indemnification arising from Naglreiter's alleged breach of the Agreements. (*See* Am. Countercl. ¶¶ 61-62). The indemnification clause at issue does not contain such "unmistakably clear" language that "refers exclusively or unequivocally to claims" between them which would support Titan's first-party indemnification claim:

> Indemnification by NMDDO. NMDDO will defend, indemnify, and hold harmless Titan, its parent and subsidiaries and each of their respective agents, directors, officers, and employees from and against any and all losses, damages, liabilities, claims, demands, actions (including third-party claims and actions), suits, judgments and proceedings, whether civil, criminal, administrative, investigative, or otherwise, together with all costs, expenses and other amounts (including reasonable attorneys' fees and court costs) ("Claims") incurred, suffered or sustained by any of them at any time or times (whether during or after the Term) to the extent based upon or arising out of or related to (i) NMDDO's breach of a representation, warranty or covenant under this Agreement or a SOW, (ii) the infringement of a Deliverable and/or an Invention on the intellectual property or proprietary rights of any person (other than if such infringement arises from any Deliverable and/or Invention made in accordance with specifications and other directions provided by Titan to NMDDO), and/or (iii) NMDDO's gross negligence and/or willful misconduct or violation of applicable law in connection with this Agreement.

(PSA § 14.1).

This indemnification clause is analogous to the one the Second Circuit examined in *Lehman XS*, which it found did not "unequivocally" in "unmistakably clear" language extend to first-party claims. In *Lehman XS*, Greenpoint sold pools of mortgage-backed securities to plaintiff pursuant to two agreements in which Greenpoint made certain representation and warranties ("R & Ws") regarding the quality of the subject loans. *Lehman XS*, 916 F.3d at 120-21. The agreements contained an indemnification clause which stated, in relevant part:

> [GreenPoint] agrees to indemnify [Lehman] and hold it harmless from and against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that [Lehman] may sustain in any way related to (i) any act or omission on the part of [GreenPoint] or any other person or entity in the origination, receiving, processing, funding or servicing any Mortgage Loan prior to the related Transfer Date or otherwise arising from the transfer of servicing of the Mortgage Loans provided for in this Agreement, [and] (ii) any assertion based on, grounded upon [or] resulting from a

52520348;2

Breach of any of [GreenPoint's R & Ws] contained herein.... [GreenPoint] shall immediately notify [Lehman] if a claim is made by a third party with respect to this Agreement or the Mortgage Loans ...

*Id.* at 121 (alterations in original). After discovering the purchased loans breached GreenPoint's R & Ws under the agreements, plaintiff filed a complaint alleging causes of action for, among others: (1) breach of contract seeking specific performance; (2) breach of contract seeking monetary damages; and (3) indemnification based on the language in the agreements. *Id.* at 123.

Critical to this Motion, the Second Circuit concluded the analogous indemnification clause in *Lehman XS* did "not 'unequivocally' or in 'unmistakably clear' language extend to first-party claims." *Id.* at 126-27. Consequently, "[i]n the absence of such language, the provision must be read to contemplate an actual indemnification scenario," in which Titan would only be entitled to repayment if it had suffered losses related to *liability to a third party* directly tied to Naglreiter's supposed-breaches of the Agreements. *See id.* at 126-27. However, nowhere does Titan allege this; the only "damages" Titan alleges are costs associated with its decision to voluntarily retain the services of a new provider for the services Naglreiter was performing, (*see* Am. Countercl. ¶ 62), which are not unequivocally or unmistakably covered by PSA § 14.1. Therefore, Titan has failed to state a claim for indemnification, nor will it be able to, and Count IV must be dismissed with prejudice.

**2.     Titan's indemnification claim must be dismissed as duplicative of its breach of contract claim and contrary to the PSA's express limitation of liability provisions.**

As established above, Titan's indemnification claim is nothing more than a repackaged version of its breach of contract claim, and therefore should be dismissed as duplicative. Comparing the claims, Titan seeks the same relief in both. (*Compare* Am. Countercl. ¶¶ 34, 45 *with* ¶ 62). Therefore, any argument that Section 14.1 provides an "independent" remedy different than the remedy Titan seeks in its breach of contract claim is meritless. *See Lehman XS*, 916 F.3d at 127 ("[T]he indemnification claim cannot be 'independent' if its success directly depends on the breaches of the R & Ws in the [agreements] outlined in the contract claims."). Here, as in *Lehman XS*, "[t]here is no 'indemnified' party who covered a loss that should have been paid by a third-party obligor. There is thus no 'independent' claim for indemnification." *Id.*

The PSA's limitation of liability clauses further support this conclusion. The relief Titan seeks in its indemnification claim—incidental costs associated with starting with and equipping a new provider—are "Indirect Damages" as defined by the PSA and fall within Section 19.3 which

- 19 -

bars "any indirect, incidental, special, consequential . . . damage or loss (including loss of profit, business investment, reputation and anticipated savings) whether in contract, warranty, negligence, tort, strict liability or otherwise…." (PSA § 19.3).

Because the relief Titan seeks is governed by Section 19.3, Titan's claim is barred unless an exception applies. One such exception is in the case of a party's breach of their indemnification obligations. This illustrates the absurdity of Titan's indemnification claim. If this exception applies to Titan's first-party indemnification claim, one could circumvent the limitation of liability clause simply by repackaging a breach of contract claim as a first-party indemnification claim.[20] This would completely vitiate Section 19.3 and render it meaningless. New York law does not permit such a result:

> In interpreting a contract under New York law, "words and phrases ... should be given their plain meaning," and the contract "should be construed so as to give full meaning and effect to all of its provisions." *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (citation and internal quotation marks omitted). "[A]n interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless … is not preferred and will be avoided if possible.'" *Id.* at 124 (quoting *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (internal quotation marks omitted)).

*LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 425 F.3d 195, 206 (2d Cir. 2005).[21] For the foregoing reasons, Titan's first-party indemnification claim must be dismissed with prejudice.

## IV.    Titan's Conversion Claim Must Be Dismissed

Titan's conversion claim must be dismissed for the same reason as its fraud and negligence claims: the alleged conduct forming the basis of the conversion claim is the same as Titan's breach of contract claim, and thus barred by the independent tort rule. "Where there is a contractual relationship between the parties, the alleged conversion must go beyond, and be independent from,

---

[20] If Titan's indemnification claim is permitted to proceed then Naglreiter would have an equally viable claim for first-party indemnification against Titan and could seek additional indirect, incidental, special, consequential, etc. damages in its case in chief, thereby circumventing the limitation of indirect damages liability the Parties contracted for.

[21] "[A] court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect." *Amaranth LLC v. J.P. Morgan Chase & Co.*, 888 N.Y.S.2d 489, 493 (App. Div. 1st Dep't 2009). To that end, it is a basic tenet of New York law that contracts are to be interpreted as a whole. *United States v. Hamdi*, 432 F.3d 115, 123 (2d Cir. 2005). "[S]pecific clauses of a contract are to be read consistently with the over-all manifest purpose of the parties' agreement." *Barrow v. Lawrence United Corp.*, 538 N.Y.S.2d 363, 365 (App. Div. 1989) (internal citations omitted).

52520348;2

a failure to comply with the terms of a contract." *Intertech Trading Corp. v. JP Morgan Chase Bank, N.A.*, No. 17-cv-21091, 2017 WL 7792705, at *5 (S.D. Fla. Aug. 28, 2017) (Altonaga, J.) (quotations and citations omitted); *see also Cutler v. Voya Fin., Inc.*, No. 18-cv-20723, 2018 WL 4410202, at *5 (S.D. Fla. Aug. 23, 2018) (Torres, M.J.) ("[T]he Eleventh Circuit and Florida courts have consistently held that a conversion action is not an appropriate means of vindicating a claim which essentially alleges breach of contract." (quotation and citation omitted)), *report and recommendation adopted*, 2018 WL 7627867 (S.D. Fla. Oct. 26, 2018) (Williams, J.).[22]

Titan's conversion claim seeks compensatory damages for Naglreiter's alleged failure to "return" the tools and equipment, which are considered "Capital Assets" under the PSA. (*See* Am. Countercl. ¶¶ 36, 64-65). In support of its conversion claim, Titan alleges, "[b]y failing to return Titan's property, Naglreiter has deprived Titan of the use of its property." (*Id.* at ¶ 66). However, this is the exact allegation that forms a part of Titan's breach of contract claim. (*See id.* at ¶ 45 ("Naglreiter breached the PSA and SOWs by: … (5) failing to return property paid for by Titan as required by the terms of the agreements….")). Notably, Titan does not seek the return of "its" property, but instead seeks compensatory damages—the same relief it seeks in its breach of contract claim. (*See* Am. Countercl., Count V, Prayer for Relief at 22). The Parties are in a contractual relationship, "and the alleged conversion fails to go beyond, and be independent from, a failure to comply with the terms of a contract." *Intertech Trading*, 2017 WL 7792705, at *5. Therefore, because the return of property is governed by Section 7.4 of the PSA, and forms the basis of Titan's breach of contract claim, Titan's conversion claim must be dismissed with prejudice.

## V.     Titan's Civil Theft Claim Fails to State a Claim and Is Not Independent From Its Breach of Contract Claim

---

[22] To the extent this Court finds New York law applies to Titan's conversion claim, New York law appears to be in conformity with Florida law. *See, e.g., Fesseha v. TD Waterhouse Inv. Servs.*, 305 A.D.2d 268, 269, 761 N.Y.S.2d 22, 24 (2003) ("A cause of action for conversion cannot be predicated on a mere breach of contract. Here, plaintiff's conversion claim allege[d] no independent facts sufficient to give rise to tort liability and, thus, was nothing more than a restatement of his breach of contract claim.") (internal quotations and citations omitted); *Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 417, 694 N.Y.S.2d 424 (1999) ("Since the appellant's conversion counterclaim does not stem from a wrong independent of the alleged breach of the mortgage agreements, it was properly dismissed.").

Titan's civil theft claim must be dismissed for failure to state a claim because (1) Titan does not allege that Naglreiter acted with criminal intent to deprive Titan of its property, and (2) Titan fails to allege a sophisticated scheme of deceit and fraud.

"To establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with *criminal intent*." *Heldenmuth v. Groll*, 128 So. 3d 895, 896 (Fla. 4th DCA 2013) (emphasis added) (quoting *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008)). And to bring a claim for civil theft under Florida law for property that is also the subject of a contract, "the civil theft must go beyond, and be independent from, a failure to comply with the terms of the contract." *Appleton Productions, Inc. v. Auto Sport Group, Inc.*, No. 18-CV-81435, 2018 WL 7287158, at *2 (S.D. Fla. Dec. 26, 2018) (Rosenberg, J.) (quoting *Heldenmuth*, 128 So. 3d at 896). "Where the property at issue is also the subject of a contract between the parties, a civil theft claim requires additional proof of an intricate sophisticated scheme of deceit and theft." *Id.* (quoting *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. 4th DCA 2000)).

Titan's civil theft claim involves property Titan allegedly provided to Naglreiter, either directly or indirectly, which is the subject of and covered by the PSA. (*See* Am. Countercl. ¶¶ 35-38, 77).[23] In cases such as this, when the property at issue is subject to a contract between the parties, Titan must allege an "intricate sophisticated scheme of deceit and theft" in order to satisfy its pleading burden. *See Appleton*, 2018 WL 7287158, at *2-3. For example, in *Appleton* the court found that the plaintiff had sufficiently stated a cause of action for civil theft when it alleged a sophisticated scheme to deprive plaintiff of the property that included three separate misrepresentations about the property ("a series of deceptions") which induced plaintiff to hand over possession and title to the vehicle at issue. *See id.* at *3. Importantly, the alleged misrepresentations were independent of and fell outside the terms of the contract between the parties. *See id.* at *2-3.

Here, Titan does not allege a "series of deceptions" that Naglreiter has employed to deprive Tian of its property, or an "intricate sophisticated scheme of deceit and theft." Instead, this is a straightforward breach of contract issue—the property at issue is subject to and governed by the

---

[23] Titan fails to incorporate by reference its general allegations in Count VII for civil theft, which appears to have been an oversight. (*See* Am. Countercl. ¶ 77 (beginning: "As set forth above, . . .")).

52520348;2

terms of the PSA. While the parties have a dispute over whether Titan has sufficiently complied with the requirements of the PSA to take possession of that property (and Naglreiter's claim for storage fees for Titan's failure to timely remove the property at its own cost), this dispute does not arise to the level of a civil theft claim under Florida law—a claim that Titan must prove by clear and convincing evidence. Thus, it must be dismissed with prejudice, and Naglreiter should be awarded fees incurred in defending against this frivolous claim. *See* Fla. Stat. § 772.11(1).

## VI.     Titan's Claims Seeking "Wrongful Act Damages" Must Be Dismissed or Stricken from the Counterclaim for Failure to State a Claim

Titan seeks the recovery of "wrongful act damages" as part of its recovery for its breach of contract, fraudulent inducement, and negligent misrepresentation claims. (*See* Am. Countercl., Counts I–III, Prayers for Relief, at 19-21). Naglreiter interprets this request as one for damages pursuant to Florida's "wrongful act doctrine." In addition to the reasons outlined above, Titan's fraud claims seeking this relief must also be dismissed—or, in the alternative, the requested relief should be stricken from the corresponding Prayers for Relief pursuant to Rule 9(f), Fed. R. Civ. P.—because: (1) Titan fails to state a claim for which this relief can be granted as a matter of law, and (2) such relief is explicitly barred pursuant to the Agreements' limitation of liability provisions.

Florida courts "have recognized the 'wrongful act doctrine' which permits a plaintiff to recover third-party litigation expenses as special damages where the defendant's wrongful act caused the plaintiff to litigate with the third-party." *Winselmann v. Reynolds*, 690 So. 2d 1325, 1328 (Fla. 3d DCA 1997). That doctrine provides that:

> where the wrongful act of the defendant has involved the claimant in litigation with others or placed him (or her) in such relation with others as makes it necessary to incur expenses to protect his interest, such costs and expenses, including attorney's fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages.

*Id.* (collecting cases). Titan does not allege in its Counterclaim that Naglreiter's conduct caused Titan to incur expenses or attorneys' fees in litigation with a third-party. Thus, Titan has failed to state a claim for such relief and it must be dismissed and/or stricken from Counts I, II, and III.

Additionally, such dismissal should be with prejudice because even if Titan could allege sufficient facts—which it cannot—such relief is explicitly barred by the Agreements' limitation of liability provisions. (*See* PSA §§ 19.2, 19.3).

- 23 -

## Conclusion

For the reasons discussed above, Titan's claims for fraudulent inducement, negligent misrepresentation, indemnification, conversion, and civil theft against Naglreiter should be dismissed, *with prejudice*. Additionally, Titan's claims seeking "wrongful act damages" should be dismissed and/or stricken as a matter of law.

Dated: <u>March 30, 2020</u>.

Respectfully submitted,

Akerman LLP

*/s/ Ashley A. Sawyer*
Mark J. Bernet, Esq.
Florida Bar No. 606359
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
Telephone: (813) 223-7333
Facsimile: (813) 218-5495
Email: mark.bernet@akerman.com
Email: judy.barton@akerman.com

*and*

Ashley A. Sawyer, Esq.
Florida Bar No. 0012131
Max C. Rudolf, Esq.
Florida Bar No. 98766
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
Telephone: (954) 463-2700
Email: ashley.sawyer@akerman.com
Email: jill.parnes@akerman.com
Email: max.rudolf@akerman.com
Email: grace.veniero@akerman.com

*Counsel for Naglreiter Consulting, LLC*

## CERTIFICATE OF SERVICE

I hereby certify a true and correct copy of the foregoing was served on March 30, 2020, via CM-ECF on all counsel of record.

*/s/ Ashley A. Sawyer*

- 24 -

52520348;2