## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE No. 19-62574-Civ-COOKE/HUNT

NAGLREITER CONSULTING, LLC,
d/b/a NAGLREITER MDDO,

                Plaintiff/Counter-Defendant,

v.

TITAN MEDICAL INC.,

                Defendant/Counter-Plaintiff.

_____/

### DEFENDANT/COUNTERPLAINTIFF'S RESPONSE TO PLAINTIFF/COUNTERDEFENDANT'S MOTION TO DISMISS DEFENDANT/COUNTERPLAINTIFF'S AMENDED COUNTERCLAIM

Defendant, TITAN MEDICAL INC. ("Defendant/Counter-Plaintiff" or "Titan"), files this Response in Opposition to Plaintiff, NAGLREITER CONSULTING, LLC d/b/a NAGLREITER MDDO's ("Plaintiff/Counter-Defendant" or "Naglreiter") Motion to Dismiss Defendant's Amended Counterclaim [ECF #43], and states:

### INTRODUCTION

Plaintiff/Counter-Defendant, Naglreiter, duped Defendant/Counter-Plaintiff, Titan, into entering into a service agreement and work orders under the guise that Naglreiter had the expertise and ability to develop Titan's very technologically advanced computer-assisted robotic surgical vision equipment and instruments. In truth, Naglreiter did not have anywhere near the requisite expertise, experience, ability, or staff to perform the requirements of the parties' agreements. After convincing Titan to pay for expensive tools and equipment for Naglreiter and to make advanced payments to them, Naglreiter not only failed to develop the equipment and instruments required under the parties' agreements, but it ultimately set back the development of Titan's products to such an extent that Titan

had to start over with a new developer after removing the project from Naglreiter, despite having paid Naglreiter millions of dollars.

Even after Titan brought the performance issues to Naglreiter's attention, Naglreiter continued to mislead Titan that Naglreiter was capable of remedying the issues with its work and continued to bill Titan for its nonperformance. Titan was then required to hire another service provider, paying redundant fees and costs, in order to review the project and get it back on track.  In the meantime, Naglreiter refused to acknowledge possession of or to return the tools and equipment that are Titan's exclusive property, and Naglreiter continued to invoice Titan and demand payment. Then, while Titan was led to believe that the parties were working to resolve their issues concerning payment terms, Naglreiter filed this lawsuit for breach of contract alleging failure to pay amounts owing under the parties' agreements.

Thus, in addition to countersuing Naglreiter for damages resulting from Naglreiter's own breaches of the parties' agreements, Titan also asserts claims of fraudulent inducement and negligent misrepresentations based on Naglreiter's misrepresentations leading to and during the parties' contractual relationship, indemnification pursuant to the parties' contract, and conversion, replevin and civil theft stemming from Naglreiter's refusal to return Titan's personal property.

Now, with its Motion to Dismiss Titan's Counterclaim, Naglreiter again seeks to stop Titan from revealing the truth about Naglreiter's incompetence.

Naglreiter's Motion fails to demonstrate that dismissal of any of Titan's claims is warranted, and the Motion should be denied.

## **RELEVANT BACKGROUND**

Titan is a Canada-based publicly-traded company focused on the research and development with the intent of commercializing computer-assisted robotic surgical technologies for use in minimally invasive surgery. *See* Answer and Amended Counterclaim ECF # 38 ("Answer") at ¶5.

2

Since early 2015, Titan has been working with Plexus Corp. ("Plexus"), a strategic provider of product consulting, design, and manufacturing, in furtherance of Titan's efforts to finalize development and prepare for manufacturing and commercialization of its robotic surgical system. Answer at ¶ 10. In March and April 2018, Naglreiter convinced Plexus that it had the skill, qualifications, and expertise to advance the design and development of two of Titan's products for use with its robotic surgical system: (1) a set of multi-articulated instruments; and (2) a camera insertion tube. *Id*. at ¶¶ 12 and 13.

Based on those representations, Plexus entered into agreements with Naglreiter in approximately November 2018 in which Naglreiter agreed to design and develop Titan's above-described instruments and camera. Pursuant to the Plexus-Naglreiter agreements, Plexus provided Naglreiter with millions of dollars of Titan's confidential and proprietary equipment needed for Naglreiter to continue the development and design of Titan's products, and Naglreiter purchased and invoiced Plexus, which in turn invoiced Titan, for hundreds of thousands of dollars of additional tools and equipment for use in Naglreiter's work on Titan's products. *See id*. at ¶¶ 15-17. The Plexus-Naglreiter agreements provided that all of the equipment and tools provided to or purchased by Naglreiter for the Titan work was confidential and was and would always be the property of Plexus and, in turn, Titan.

In approximately December 2018, Titan visited Naglreiter's facilities and learned that the products developed and produced by Naglreiter were far below any reasonable or acceptable standard and simply did not work. *Id*. at ¶ 18. Titan's representatives informed Naglreiter's representatives that the products were unacceptable and non-conforming. *Id*. at ¶ 19.

As detailed in the Counterclaim, during an in-person meeting at Naglreiter's facilities in January 2019, Brett Naglreiter and other Naglreiter representatives acknowledged that their products had issues but placed the blame for their substandard performance on Plexus. *Id*. at ¶ 20. Therefore,

3

Titan worked to personally assist Naglreiter and provide whatever guidance or information they claimed was lacking from Plexus, yet, Naglreiter's work did not improve.

Nevertheless, Naglreiter convinced Titan that if Titan, rather than Plexus, were to be directly involved with Naglreiter, Naglreiter was capable of completing the work needed in a satisfactory manner. As detailed in the Counterclaim, between June and August 2019, Naglreiter's agents and representatives (identified in the Counterclaim) represented to Titan's representatives (also identified in the Counterclaim) that Naglreiter was capable of providing the services and products needed by Titan in a timely and satisfactory manner. *Id.* at ¶¶ 22-24. Relying on Naglreiter's representations regarding its ability to perform, Titan entered into three agreements directly with Naglreiter: (1) a Provider Services Agreement (attached as Exhibit A to the Amended Complaint) in June 2019 ("PSA"); (2) a Statement of Work for the multi-articulated instruments in August 2019; and (3) a Statement of Work for the camera insertion tube in August 2019 (the Statements of Work are collectively referred to as the "SOWs")[1]. These agreements are the bases for the breach of contract claims in this lawsuit.

Section 20.5 of the PSA provides that the agreement is governed by New York law. After the parties' relationship broke down due to Naglreiter's continued inability to perform as required by the agreements and disputes regarding payments required by the agreements, on October 4, 2019, Naglreiter sent Titan a notice of default letter demanding that if Titan did not pay Naglreiter amounts Naglreiter claimed were due ($2,902,916.45), Naglreiter would sue Titan. After Naglreiter's counsel refused to provide Titan's counsel time to investigate Naglreiter's claims toward a possible resolution

---

[1] The PSA contains confidentiality provisions protecting the parties from disclosure of the agreement among other matters. The parties have agreed in writing to waive the confidentiality terms only insofar as to permit the filing of the PSA itself in the public record in support of the parties' pleadings and allegations. Therefore, pursuant to that agreement, a copy of the PSA is attached to Plaintiff's Motion to Dismiss and specific provisions are referenced herein.

without litigation, Titan responded to Naglreiter's demand on October 11, 2019, and informed Naglreiter that it disagreed with Naglreiter's claims and that it was, in fact, Naglreiter that had breached the parties' agreements and committed other tortious conduct.

Naglreiter then filed a Complaint against Titan on October 16, 2019, alleging breach of contract based on an alleged failure to pay amounts Naglreiter claims were due under the agreements. [ECF No. 1]. On February 14, 2020, Naglreiter filed an Amended Complaint adding a second count for unjust enrichment and seeking, for the first time, imposition of a constructive trust over Titan's valuable property that Naglreiter refused to identify or return.

Since Naglreiter sent its first demand letter in October 2019, Titan sent numerous correspondence to Naglreiter demanding that Naglreiter cease use of Titan's highly confidential and valuable equipment and arrange for its return to Titan pursuant to the parties' Agreement. Naglreiter has refused to cooperate with Titan's demands and has instead continued to use the equipment, has displayed it to the public, and provided access to unauthorized persons, in contravention of strict confidentiality provisions in the parties' agreements.

On March 9, 2020, Titan filed its Answer and Affirmative Defenses to the Amended Complaint, along with its Amended Counterclaim, which asserted eleven affirmative defenses and eight counterclaims against Naglreiter based, generally, on Naglreiter's incompetence and its misrepresentations both prior to and during the parties' contractual relationship, as well as Naglreiter's refusal to identify, return or cease using Titan's property within its possession. [ECF No. 38]. As Titan's Affirmative Defenses and Counterclaim reflect, every alleged breach of the agreements by Titan is prompted by failure to perform and obstructionism by Naglreiter.

On March 30, 2020, Naglreiter filed the Motion to Dismiss now at issue. [ECF No. 43]. Concurrently with its Motion to Dismiss five of Titan's eight counterclaims, Naglreiter filed a Motion to Strike nine of Titan's eleven affirmative defenses. [ECF No. 44].

As set forth below, Naglreiter's Motion to Dismiss fails to demonstrate any valid basis for dismissal of any of Titan's counterclaims and, therefore, should be denied.

## MEMORANDUM OF LAW

**I.      Legal Standards.**

       **A.** *Motions To Dismiss Under Federal Rule of Civil Procedure 12(b)(6).*

For purposes of a motion to dismiss, this Court's review is "limited to the four corners of the complaint" and any documents referred to in the complaint that are central to the claim. *Stonecreek – AAA, LLC v. Wells Fargo Bank N.A.*, 12-CIV-Cooke, 2013 U.S. Dist. LEXIS 138437, *8 (S.D. Fla. Sept. 26, 2013) (citing *Nationwide Advantage Mortgage Co. v. Fed. Guar. Mortgage Co.,* 09-20372-CIV-Gold, 2010 U.S. Dist. LEXIS 80038 (S.D. Fla. Feb. 26, 2010) (quoting *St. George v. Pinellas Cty.,* 285 F.3d 1334, 1337 (11th Cir. 2002)). When considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all of the plaintiff/counter-plaintiff's allegations as true and construe them in the light most favorable to the plaintiff or counter-plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Stonecreek,* 2013 U.S. Dist. LEXIS 138437 at *8 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (noting that a plaintiff must articulate "enough facts to state a ***claim*** to relief that is plausible on its face."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Detailed factual allegations are not required, but a pleading "that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly,* 550 U.S. at 555).

A party must state with particularity the circumstances constituting allegations of fraud or mistake. Fed. R. Civ. P. 9(b). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. *Id.* "Rule 9(b)'s heightened pleading standard may be applied less stringently, however, when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" *Hill v. Morehouse Med. Assocs., Inc.,* 2003 U.S. App. LEXIS 27956, 2003 WL 22019936, at *3* (11th Cir. 2003).

Simply put, a plaintiff alleging fraud must plead "the who, what, when, and where [of the fraud]…." *Infante v. Bank of Am. Corp.,* 680 F. Supp. 2d 1298, 1302-03 (S.D. Fla. 2009) *aff'd*, 468 F. App'x 918 (11th Cir. 2012) (quoting *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 178 (5th Cir. 1997)) (emphasis in original). Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross and Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1371 (11th Cir.1997)).

These factors are not exclusive, however, and a plaintiff may satisfy Rule 9(b)'s particularity requirements through alternative means. *Brooks,* 116 F.3d at 1371 (citing *Durham v. Business Management Assoc.*, 847 F.2d 1505, 1512 (11th Cir. 1988)). Following the Eleventh Circuit's guidance in *Brooks* and *Durham*, courts in this District consistently explain, "Rule 9's particularity requirements must be read in conjunction with Rule 8 'so as not to abrogate the concept of the notice pleading.'" *SEC v. Levin*, No. 12-21917-CIV-Rosenbaum, 2013 U.S. Dist. LEXIS 146702, at *21 (S.D. Fla. Oct. 10, 2013) (*quoting Degirmenci v. Sapphire-Fort Lauderdale,* 693 F. Supp. 2d 1325, 1344 (S.D. Fla. 2010) (*quoting Durham*, 847 F.2d at 1511)). Because fair notice is the most basic consideration underlying

Rule 9(b), a complaint must reasonably notify the defendant of his purported role in the scheme and, in cases involving multiple defendants, the complaint must inform each defendant of his or her alleged role in the fraud. *Levin*, 2013 U.S. Dist. LEXIS 146702, at *21 (citing *Brooks,* 116 F.3d at 1381).

As such, precise details are "not required so long as the [complaint] adequately alerts Defendants of the nature of the misconduct with which they are charged." *Id*; *see also Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.*, 814 F. Supp. 1084, 1092-93 (S.D. Fla. 1992) (Moreno, J.) ("To fulfill the particularity requirement, a complaint must give defendants fair notice of the nature of the claim, notice of the grounds upon which the claim rests, and be based upon a reasonable belief that a wrong has been committed.") (*quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (noting that "focusing exclusively on [Rule 9(b)'s] 'particularity' language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." (internal citation omitted)). In *Colonial Penn,* the court found the allegations satisfied the requirements of Rule 9(b) where it identified who made the fraudulent representations, set forth the general time frame in which the misrepresentations were made, the reasons why the representations amounted to fraud, and the alleged scheme in "considerable detail." 814 F. Supp. at 1092-93.

## II.     Naglreiter Fails To Demonstrate Any Basis For Dismissal Of Titan's Fraudulent Inducement Or Negligent Misrepresentation Claims.

### A. *Titan's Fraudulent Inducement And Negligent Misrepresentation Claims Satisfy The Pleading Requirements of Rule 9(b).*

Counts II and III of Titan's Amended Counterclaim more than adequately alert the Counter-Defendant of the nature of the misconduct with which they are charged.

In Counts II and III, Titan alleges that Naglreiter made false statements of material fact and omitted material facts to Titan upon which Titan relied in entering into the PSA and SOWs with Naglreiter. As set forth in the Amended Counterclaim, the misrepresentations and omissions were made to induce Titan and its agents to believe that Naglreiter was qualified, equipped, and able to

perform the services contemplated by the parties' agreements and to believe that the parties were agreeing to modified payment schedules. Amended Counterclaim at ¶¶ 48 and 55. Contrary to Naglreiter's arguments in its Motion, Titan's allegations are not mere generalized allegations but, instead, are supported by substantial details supporting the claims. For example, Titan alleges that "in April and May 2018, Naglreiter's agents and representatives, including Brett Naglreiter, William Duenas, and Brandon Hunt touted Naglreiter's qualifications and competencies […] to Titan's agents and representatives, including Perry Genova, during presentations at Naglreiter's facility in Miramar, Florida." *See* Amended Counterclaim at ¶ 12. Such qualifications and competencies are described in the Amended Counterclaim as the skill, qualifications, and expertise to advance the design and development of a set of multi-articulated instruments and a camera insertion tube, at a reasonable cost for use with its robotic surgical system. *Id.* at ¶ 11. Moreover, the Amended Counterclaim details additional statements in January 2019 at Naglreiter's facilities when Brett Naglreiter claimed that its substandard performance was the fault of Plexus, in addition to additional statements between June and August 2019 at Naglreiter's facilities by Brett Naglreiter to Perry Genova and Chris Seibert in which Naglreiter claimed they were capable of completing Titan's work as set forth in the parties' SOWs. *Id.* at ¶¶ 20, 22, 24.  During the identified meetings, Brett Naglreiter and his agents, William Duenas and Brandon Hunt, failed to inform Titan's representatives that Naglreiter was, in fact, not capable of performing the agreed services.

As demonstrated by the Amended Counterclaim, the pleading identifies who made the fraudulent representations, sets forth the time frame in which the misrepresentations and omissions occurred, where the parties were when the misrepresentations were made, the reasons why the representations amounted to fraud, and Naglreiter's overall fraudulent conduct in considerable detail. As set forth above, these detailed allegations satisfy Rule 9(b). *See Levin*, 2013 U.S. Dist. LEXIS 146702 at *21; *Colonial Penn Ins.*, 814 F. Supp. at 1092-93.

The Amended Counterclaim satisfies the heightened pleading standard set forth in Rule 9(b) as it: 1) identifies Brett Naglreiter, William Duenas, and Brandon Hunt as the individuals who made the fraudulent representations; 2) sets forth the general time frame of a two month span during which the misrepresentations and omissions were made[2] 3) explains that the misrepresentations and omissions amounted to fraud because the false statements surrounding Naglreiter's competency were known by Naglreiter to be false and used to induce Titan to enter into the contracts; 4) and details the back and forth communications between Titan and Naglreiter in which Naglreiter continues to misrepresent its skills and place blame on third-parties for issues with its performance. *See Colonial Penn Ins. Co.* 814 F. Supp. at 1092-93. All of these allegations surrounding Naglreiter's misrepresentations detailed in the Amended Counterclaim set forth what statements Naglreiter made and what information they omitted, when and how the statements were made, the content of the statements and how they misled Titan, and what Naglreiter obtained as a result of the statements or omissions. The pleading surely gives Naglreiter more than fair notice of the nature of the claims and Naglreiter's role in the fraud and satisfies Rule 9(b). *See Durham*, 847 F.2d at 1512.

As set forth above, the Eleventh Circuit has held that even allegations of date, time, or place satisfy the rule. *See Durham*, 847 F.2d 1505 at 1512. What is important is that the pleading gives the defendant fair notice of the claims brought against it, *see Pruco Life Ins. Co. v. Brasner*, No. 10-80804-CIV-COHN/SELTZER, 2011 U.S. Dist. LEXIS 72752, at *15-16 (S.D. Fla. July 7, 2011) (*citing*

---

[2] Contrary to Naglreiter's contentions, alleging a two-month timeframe coupled with allegations detailing the context and location misrepresentations were made – here, specifically during presentations at Naglreiter's facility – is sufficient. *See In re U. S. Oil & Gas Litig.*, No. 83-1702-A1-CIV-HOEVELER, 1988 U.S. Dist. LEXIS 2217, at *4-5 (S.D. Fla. Feb. 8, 1988) (Plaintiffs adequately allege the time period, roughly from 1979-83, during which Defendants' fraudulent conduct occurred); *see also Raimbeault v. Accurate Mach. & Tool, LLC*, No. 14-CIV-20136, 2014 U.S. Dist. LEXIS 140313, 2014 WL 5795187, at *11 (S.D. Fla. Oct. 2, 2014) (holding that a "sufficiently narrow timeline, including specific events, documents and places" provided enough notice to defendants to satisfy the pleading standard).

*Holguin*, 2010 U.S. Dist. LEXIS 43638, 2010 WL 1837808, at *2), and Titan's pleading provides Naglreiter with such notice here.

Naglreiter also attempts to minimize its misrepresentations, contending that representations regarding Naglreiter's skill, qualifications, and expertise, are merely opinion. *La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 713 (Fla. 5th DCA 1998), cited by Naglreiter in support of this point is inapposite because the Fifth District's analysis of what constituted fraudulent inducement focused on representations describing a product at issue as "top quality." *Id.* The *La Pesca* Court explained that representing a product as "top quality" is merely opinion because the characterization of a product's quality is not factual. Here, on the other hand, whether or not Naglreiter is qualified or has the requisite skills to develop specific instruments is a factual statement, not an opinion. In other words, either they had the skills and ability or they did not – they did not. Thus, Naglreiter's misrepresentations were not mere opinions, and the La Pesca decision does not support Naglreiter's Motion.

Upon further review of the allegations and in the interest of conserving the parties and the Court's resources, Titan agrees to withdraw portions of its fraud-based claims insofar as they are based on the representations made by Naglreiter to Plexus, and relies on the representations made to Titan in support of Counts II and III.

For the reasons set forth above, Counts II and III of the Amended Counterclaim satisfy Rule 9(b)'s particularity requirements, and the Motion to Dismiss should be denied. In the event this Court disagrees and finds that further detail is required, Titan respectfully requests an opportunity to amend its Fraud Claims.

### B. Titan's Fraud Claims Are Not Barred By The Merger Clause In The Parties' Agreements.

Naglreiter's argument that Titan's Fraud Claims are barred by the merger clauses in the parties' agreements is without merit.

11

First, both New York[3] and Florida recognize a merger clause exception to prevent the use of contractual merger clauses to bar a fraudulent inducement claim. The Fraud Claims here fall squarely within the merger clause exception, which was articulated by this Court in *McArthur Dairy, LLC v. McCowtree Bros. Dairy, Inc.* Case No. 09-62033-CIV-COOKE, 2011 U.S. Dist. LEXIS 57863, *23-24, 2011 WL 2118701 (S.D. Fla. May 27, 2011) (holding that when a defendant alleges that plaintiff made false representations with the requisite intent for defendant to enter into the agreement based on those representations, defendant's allegations of fraudulent inducement fall well within the merger clause exception) (*citing Mejia v. Jurich*, 781 So. 2d 1175, 1178 (Fla. 3d DCA 2001) ("[t]he existence of a merger or integration clause, which purports to make oral agreements not incorporated into the written contract unenforceable, does not affect oral representations which are alleged to have fraudulently induced a person to enter into the agreement.") and *Nobles v. Citizens Mortgage Corp.*, 479 So. 2d 822 (Fla. 2d DCA 1985) ("oral agreements or representations may be introduced into evidence to prove that a contract was procured by fraud notwithstanding such a merger clause.")). *See also Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100, 111-12 (E.D.N.Y. 2009) (under New York law, merger clauses generally do not bar claims for fraudulent inducement unless the clause itself specifically addresses the very conduct complained of in the fraud allegation); *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320, 157 N.E.2d 597, 184 N.Y.S.2d 599 (1959); *Fierro v. Gallucci*, No. 06-CV-5189, 2008 U.S. Dist. LEXIS 38513, 2008 WL 2039545, at *13-*14 (E.D.N.Y. May 12, 2008); *Hobart v. Schuler*, 55 N.Y.2d 1023, 434 N.E.2d 715, 716, 449 N.Y.S.2d 479 (1982) ("a merger clause is generally insufficient to bar parol evidence of a fraudulent misrepresentation").

The cases relied on by Naglreiter in support of its claim that the merger clause should bar Titan's fraud claims are inapposite and do not support dismissal of fraud claims on this basis but,

---

[3] As indicated above, the parties' PSA expressly provides that it is governed by New York law. PSA at ¶ 20.5. Therefore, to the extent claims are based on terms of the PSA, New York law applies.

instead, remind the court that the determination of whether a merger clause may bar fraud claims is a case-by-case determination based upon consideration of the facts of the particular case. Naglreiter relies on the Middle District decision in *Freeman v Sharpe Resource Corp.*, Case No. 6:12-cv-1584-ORL-22TBS (M.D. Fla., April 3, 2013). In that case, the court *denied* a motion to dismiss where party sought to bar fraud claims based on a merger clause and held that the determination should be made on case-by case basis, and the language in the merger clause at issue did not adequately cover the alleged misrepresentations. Notwithstanding Naglreiter's claim that it is "undisputed" that the misrepresentations are expressly covered by the PSA (Motion at 11), like the *Freeman* case, the terms of the PSA merger clauses ***do not*** adequately cover Naglreiter's misrepresentations and omissions that are the basis for Titan's Fraud Claims.

The PSA merger clause does not contemplate misrepresentations made to induce entry into the agreement, and the Fraud Claims fall within the merger clause exception described above. Therefore, the merger clause does not bar Titan's Fraud Claims.

Based on the foregoing, it is clear that the parties' agreements' merger clauses cannot serve as a bar to Titan's Fraud Claims, and dismissal of those claims on that basis is not warranted.

**C.   *Naglreiter's Fraud Was Separate And Prior To The Parties' Agreements*.**

Naglreiter's next argument, that Titan's Fraud Claims are not independent of the performance of the parties' agreements also fails because the bulk of Titan's allegations of Naglreiter's fraudulent and negligent misrepresentations occurred prior to the consummation of the PSA.  As Titan alleges, had Naglreiter not intentionally and/or negligently misrepresented its expertise and ability to produce the surgical equipment and instruments for Titan, Titan would not have entered into the PSA in the first place. Am. Counterclaim at ¶ 22, 24, 48 – 53.Further, Naglreiter continued to make its misrepresentations, inducing Titan to pay more to Naglreiter and to purchase more and more expensive tools and equipment that Naglreiter claimed it required to perform under the PSA and the

subsequent SOWs.   Thus, the Fraud Claims are based on Naglreiter's conduct prior to and independent of the existence of each of the agreements between the parties, *not* on Naglreiter's failure to perform under those fraudulently induced agreements.

Under both Florida and New York law, where fraud claims are based on conduct independent of obligations under the respective agreements, including, particularly, fraudulent inducement and misrepresentation claims, courts permit such claims to proceed. *See Stonecreek - AAA, LLC v. Wells Fargo Bank N.A.*, 2013 U.S. Dist. LEXIS 138437 *16-18; 2013 WL 5416970 (S.D. Fla. Sept. 26, 2013) (Cooke, J.) (recognizing the Florida Supreme Court in *Tiara Condominium* issued a ruling that receded from its previous decisions regarding the economic loss rule to permit assertion of contract and tort claims where the tort claims are distinguishable from the breach of contract); *see also See McArthur Dairy, LLC v. McCowtree Bros. Dairy, Inc.*, 2011 U.S. Dist. LEXIS 57863, *24-25, 2011 WL 2118701 (S.D. Fla. May 27, 2011) (Cooke, J.) (holding that the economic loss rule does not bar claims for fraudulent inducement and negligent misrepresentation and denying motion to dismiss counterclaim on the basis that Defendant alleged sufficient facts that Plaintiff's wrongful conduct induced Defendant to enter into the agreement, and were not related to the performance of the agreement.); *Weisblum v. Prophase Labs, Inc.*, 88 F Supp. 3d 283, 297 (S.D.N.Y. 2015); *see also EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 278-79 (S.D.N.Y. 2004) (allowing fraud claim to proceed in tandem with contract claims to recover economic loss). In such cases, misrepresentations that induce a party into contract stand separate and apart from the misrepresentations inherent to the performance of the contract. *Hart v. BHH, LLC*, No. 15cv4804, 2017 U.S. Dist. LEXIS 105187, at *4-5 (S.D.N.Y. July 7, 2017).

Moreover, as this Court observed in *Stonecreek*, it is premature to dismiss the Fraud Claims at this stage in the lawsuit where the parties dispute the scope and interpretation of the actual terms of the parties' Agreement and when the Court will make reasonable inferences from the Amended

14

Counterclaim in favor of Titan. 2013 U.S. Dist. LEXIS 138437 *16-18; 2013 WL 5416970. (Titan disputes its payment obligations and the enforceability of the agreements in light Naglreiter's inducement and breaches of the agreements; Naglreiter, in turn, disputes that it failed to meet the standard of performance and failed to credit Titan for advanced payments required in the agreements, and thus, seeks to enforce what may be unenforceable terms against Titan.) As such, Naglreiter's argument that Titan's fraud claims are based solely on Naglreiter's non-performance under the agreements is misplaced.

Accordingly, Titan's Fraud Claims are supported by New York and Florida law, where, as here, the fraud alleged is separate from the performance under the contract and separate from the breach of contract claims, and the Motion to Dismiss should be s denied.

**III.    Naglreiter's Attacks On Titan's Indemnification Claim Are Misplaced.**

Titan's attempt to construe Titan's indemnification claim to minimize its contractual indemnification obligations fails.

Naglreiter challenges Titan's indemnification claim on the grounds (1) the claim does not fall within the indemnification clause in the parties' agreements; and (2) the claim is duplicative of Titan's breach of contract claims. Both claims are based on a misconstruction or misunderstanding of Titan's indemnification claim and the indemnification provision in the parties' agreement itself.

Initially, under New York law, indemnification is governed by the parties' contractual language, which "must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed. The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 NY2d 487, 491-492, 548 N.E.2d 903, 549 N.Y.S.2d 365 (1989) (*internal citations omitted*).

### A.  *The PSA's Indemnification Clause Does Encompass Titan's Indemnification Claim.*

Under the plain language of the indemnification clause at issue, Titan's contractual right to indemnification is triggered when Titan suffers loss or incurs liability, and includes all costs, expenses and other amounts incurred, suffered or sustained, "based upon or arising out of or related to (i) [Naglreiter's] breach of representation, warranty or covenant under this Agreement or a SOW…" *See* PSA at §14.1. Indemnification under the PSA does not solely apply to "actions." Rather, the contractual language provides for indemnification stemming from "losses, damages, liabilities … or otherwise" arising out of or related to Naglreiter's breaches.

Here, Titan's indemnification counterclaim falls squarely within the provision. The claim arises from Titan having to retain new service providers to cure the problems caused by Naglreiter's ineptitude and breaches of the parties' agreements and related misconduct. Simplified, Titan is now liable to third-parties as a result of Naglreiter's breaches of the representations, warranties, and covenants under the agreements. Pursuant to the clear language of the indemnification provision, Titan is entitled to repayment or indemnification from Naglreiter for those liabilities.

In support of its argument against Titan's claims based on the indemnification clause, Naglreiter relies on the Second Circuit decision in *Lehman XS Tr., Series 2006-GP2 v. GreenPoint Mortg. Funding, Inc.,* 916 F.3d 116, 125 (2d Cir. 2019). (*See* Motion at 17). However, the *Lehman* decision actually supports Titan's indemnification claim in this case, in which the losses claimed relate to liability to third parties. The *Lehman* court wrote: "Where parties agree to 'indemnify' each other for losses incurred by a breach of contract, where those lo[s]ses *do not relate to liability to a third party*, the characterization of 'indemnification' is no more than an epithet for recovery for breach of contract." 916 F.3d at 125 (emphasis added) (*citing Xerox State & Local Sols., Inc. v. Xchanging Sols. (USA), Inc.*, 216 F. Supp. 3d 355, 364 (S.D.N.Y. 2016)).  In *Lehman*, first-party indemnification was denied because the plaintiff failed to allege payment to third parties. *Id.* ("U.S. Bank **would be entitled to repayment if it paid**

*out costs to a third party*. U.S. Bank does not allege that to date it has paid on claims to third parties directly tied to GreenPoint's breaches" (emphasis added)).[4] Here, Titan does allege payment to a third-party provider for services, tools and equipment, and is therefore entitled to recovery under the Second Circuit's reasoning in *Lehman* and the plain language of the indemnification provision.

### B. Titan's Indemnification Claim Is Independent From Its Breach Of Contract Claim And Not Affected By The PSA's Limitation Of Liability Provisions.

As discussed above, Titan's claim for indemnification falls within the indemnification provision because it is independent of its breach of contract claim and involves liability based on amounts paid and owed to third-parties by Titan as a result of Naglreiter's breach of representation and warranty. Such losses are covered by the indemnification clause and distinct from the breach of contract claims, which seek damages from Naglreiter based on amounts paid directly to Naglreiter and damages caused by Naglreiter's breaches of other provisions of the contract.

Additionally, Naglreiter's argument that the PSA's limitations of liability clause is contrary to the indemnification claim is, itself, nonsensical. The PSA expressly provides for an exception to the limitations of liability set forth in Section 19 of the PSA "in the case of any fraud or intentional misrepresentation by [Naglreiter] or breach of confidentiality or non-use *or indemnification obligations*..." (PSA at ¶¶ 19.2, 19.3 (emphasis added)). In other words, in claims by one party against the other party based on indemnification obligations, as provided in the PSA's indemnification

---

[4] The Southern District of New York explained, in *Krys v. Aaron (In re Refco Inc. Sec. Litig.)*, 890 F. Supp. 2d 332, 344 (S.D.N.Y. 2012), that indemnification provisions in contracts should be read to include claims between the contracting parties where, as here, the provision specifically distinguishes third-party claims from interparty claims, indicating an intent to cover claims between the parties, as those distinctions "would be surplusage if [the indemnification provision] did not refer also to claims between the parties themselves." (citing *Pfizer, Inc. v. Stryker Corp.*, 348 F.Supp.2d 131, 146 (S.D.N.Y.2004); and *Promuto v. Waste Mgmt., Inc.*, 44 F.Supp.2d 628, 651 (S.D.N.Y.1999).

provision, the party's damages are not limited to fees paid by Titan to Naglreiter. The indemnification claim is not contrary to but consistent with the limitation of liability provision.

For the reasons set forth above, Titan's indemnification claim is supported by and consistent with the express terms of the PSA and Naglreiter's arguments for dismissal of the claim are insupportable.

IV.     **Naglreiter Asserts No Valid Basis For Dismissal Of Titan's Conversion And Civil Theft Claims.**

A.     *The Independent Tort Doctrine Does Not Bar Conversion Or Civil Theft Claims.*

Naglreiter argues Titan's conversion and civil theft claims (Counts V and VII) must be dismissed under the independent tort doctrine (also known as the economic loss rule) because the claims stem from the same conduct that forms the basis of the breach of contract claim.

This Court has consistently held that the independent tort or economic loss rule does not bar intentional tort claims, such as conversion and civil theft, and therefore, Naglreiter's claim otherwise is groundless. *See Scinica v. Bank of Am., N.A.*, No. 09-21470-CIV-COOKE, 2010 U.S. Dist. LEXIS 30155, at *5 (S.D. Fla. Mar. 29, 2010) ("[T]he economic loss rule does not bar intentional tort claims such as conversion and civil theft.") (citing *Indem. Ins. Co. of N. Am. v. Am. Aviation Inc.*, 891 So. 2d 532, 536 (Fla. 2004)); *De Sterling v. Bank of Am., N.A.*, No. 09-21490-CIV-COOKE, 2009 U.S. Dist. LEXIS 103923, at *7 (S.D. Fla. Nov. 5, 2009) ("Intentional tort claims such as fraud, conversion, intentional interference and civil theft remain viable even if the parties are in privity of contract.").

B.     *The Conversion And Civil Theft Claims Are Otherwise Sufficiently Pled.*

Naglreiter complains that in the conversion claim, Titan does not seek the return of its property improperly withheld by Naglreiter. Naglreiter's argument on this point is unclear. The measure of damages for a claim of conversion is the fair market value of the property at the time of the conversion. *See R&B Holdings Co. v Christopher Adver Group, Inc.*, 994 So. 2d 329, 331 (Fla. 3d DCA 2008). Therefore,

18

it is not readily apparent how the fact that the conversion claim does not seek the return of the property may be a basis for dismissal of the claim.

Moreover, for the avoidance of any doubt, Titan does seek the return of its property improperly withheld by Naglreiter in both its replevin and permanent injunction counterclaims, and Titan does seek such other relief as deemed appropriate by this Court in the conversion claim.[5]

Naglreiter also argues that Titan fails to state a claim for civil theft because the claim does not specifically state that Naglreiter acted with criminal intent. Although proof of a civil theft claim does require evidence that a defendant acted with criminal intent, Naglreiter cites no authority requiring that civil theft be specifically alleged to state a claim for civil theft.

Titan's civil theft claim tracks the requirements of the applicable statute, Section 812.014, Florida Statutes, which provides: A person commits *theft* if he or she knowingly obtains or uses, or endeavors to obtain or to use, the *property* of another with intent to, either temporarily or permanently (a) deprive the other person of a right to the *property* or a benefit from the *property* or (b) appropriate the *property* to his or her own use or to the use of any person *not* entitled to the use of the *property*." The statute does not require an allegation of fraud or criminal or felonious intent but, instead, Titan must offer evidence of such intent to prove its claim. Failure to allege criminal intent is not a basis for dismissal at this stage.

Nevertheless, although Titan's claim for civil theft is adequately pled and certainly supported by the facts in this case, in an effort to streamline the issues in this case, Titan has determined to voluntarily withdraw its Civil Theft counterclaim as it may sufficiently obtain the relief sought by way of its remaining Counterclaims.

---

[5] Titan's alternative theory of recovery to its breach of contract claim is specifically limited to damages involving Naglreiter's failure to return Titan's property as required by the terms of the agreements.

Accordingly, Naglreiter offers no basis for the dismissal of Titan's conversion or civil theft claims, and, therefore, the Motion to Dismiss Counts V and VII of Titan's Amended Counterclaim should be denied.

**V.    Titan's Prayers For Relief In Counts I, II and III Of The Amended Counterclaim Are Appropriate.**

Finally, Naglreiter argues that the prayer for relief in Counts I through III is improper because it identifies wrongful act damages among the damages sought.  However, although the prayer for relief reaffirms Titan's request for damages based on Naglreiter's wrongful acts set forth in the pleading, it does not seek damages pursuant to the wrongful act doctrine, which is an exception to the American Rule, as the contract at issue already provides for entitlement to attorneys' fees. The prayer for relief is appropriate and warrants no modification or relief.

## CONCLUSION

Each of Titan's claims in its Amended Counterclaim is properly and sufficiently pled and supported by the law and the factual allegations in this case, especially when those allegations are viewed in the light most favorable to Titan.  As set forth above, Naglreiter demonstrates no valid basis for the dismissal of any of Titan's claims.

WHEREFORE, for the foregoing reasons, Titan requests that the Court DENY Naglreiter's Motion to Dismiss, permit the withdrawal of Count VII of the Amended Counterclaim, and grant such additional relief as the Court deems necessary and appropriate. Alternatively, in the event this Court determines that any of the claims are deficient, Titan respectfully requests leave to amend such claims pursuant to Rule 15(a), Federal Rules of Civil Procedure, to correct any such deficiencies.

Respectfully Submitted,

DAMIAN & VALORI LLP
*Counsel for Defendant/Counter-Plaintiff*

1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
Primary Email: mvisconti@dvllp.com
Secondary Email: jserna@dvllp.com

By: ___*s/Melissa D. Visconti*___
     Melissa D. Visconti
     Florida Bar No. 0068063

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on April 23, 2020 via CM-ECF on all counsel of record.

     *s/Melissa D. Visconti*___
     Melissa D. Visconti